IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ROBIN NIXON,<br>    Plaintiff | )<br>)<br>) |
| v. | )   CIVIL ACTION NO. 05-101 ERIE<br>) |
| NORFOLK SOUTHERN CORPORATION<br>and NORFOLK SOUTHERN RAILWAY<br>COMPANY, INC.,<br>    Defendants | )<br>)<br>)<br>)<br>)   ELECTRONICALLY FILED |

**CONCISE STATEMENT OF MATERIAL FACTS IN SUPPORT
OF MOTION FOR SUMMARY JUDGMENT ON BEHALF OF
DEFENDANTS NORFOLK SOUTHERN CORPORATION
<u>AND NORFOLK SOUTHERN RAILWAY COMPANY, INC.</u>**

Defendants NORFOLK SOUTHERN CORPORATION and NORFOLK SOUTHERN RAILWAY COMPANY, INC., by their attorneys, MacDonald, Illig, Jones & Britton LLP, file this Concise Statement of Material Facts in Support of Motion for Summary Judgment on Behalf of Defendants Norfolk Southern Corporation and Norfolk Southern Railway Company, Inc., pursuant to LR 56.1.B.1 of the Local Civil Rules of the United States District Court for the Western District of Pennsylvania:

I.        The Parties

    1.        Plaintiff Robin Nixon (hereinafter "Nixon") is an individual who claims to reside at 3603 Peach Street, Erie, Pennsylvania 16508 and who has a date of birth of December 3, 1984. (Nixon Depo., p. 3, 6).

    2.        Defendant Norfolk Southern Corporation is a corporation organized and existing under the laws of the Commonwealth of Virginia with its principal place of business in Norfolk, Virginia. (Notice of Removal, ¶ 46).

    3.        Defendant Norfolk Southern Railway Company, Inc. (more properly known as "Norfolk Southern Railway Company") is a corporation organized and existing under the laws of the Commonwealth of Virginia with its principal place of business in Norfolk, Virginia. (Notice of Removal, ¶ 4; Certificate of Merger dated 9/1/98 and related Articles of Merger of Norfolk and Western Railway Company into Norfolk Southern Railway Company).

    4.        Defendant Norfolk Southern Corporation is the parent corporation of defendant Norfolk Southern Railway Company and owns all of the shares of Norfolk Southern Railway Company. (Disclosure Statement of Defendant Norfolk Southern Railway Company, Inc.; Pandlis Depo., p. 14-15).

    5.        Effective September 1, 1998, Norfolk and Western Railway Company merged into defendant Norfolk Southern Railway Company, the surviving corporation, and everything under the control of Norfolk and Western Railway Company became the property of Norfolk Southern Railway Company.[1] (Pandlis Depo., p. 21-23, 25-26; Certificate of Merger dated

---

[1] Norfolk and Western Railway Company, which merged into Norfolk Southern Railway Company, the surviving corporation, effective September 1, 1998, is hereinafter referred to as "Norfolk Southern."

9/1/98 and related Articles of Merger of Norfolk and Western Railway Company into Norfolk Southern Railway Company).

II.     West 19th Street and Norfolk Southern's Limited Right of Way

6.      On April 27, 1997, West 19th Street in the City of Erie, Pennsylvania was a public street with an asphalt surface that ran in a generally east-west direction; that had a single set of railroad tracks on a limited right of way which also ran in a generally east-west direction through the middle of the street; and that had a westbound lane on the north side of the tracks and an eastbound lane on the south side of the tracks for vehicular and other traffic.  (Baskin Depo, p. 7; Morgan Depo., p. 15-16; Price Depo., p. 7-8; R. Nixon Depo., p. 26-27, 47; Affidavit of A. Baxter, ¶ 3; Affidavit of G. Baxter, ¶ 3).

7.      On April 27, 1997, there was a sidewalk along West 19th Street. (Baskin Depo., p. 18).

8.      The Norfolk Southern limited right of way, including the railroad tracks, extended from the ends of the ties to the ends of the ties and was 8 feet, 6 inches in width.  (Baskin Depo., p. 9-10; Morgan Depo., p. 26; Pandlis Depo., p. 17, 22-23).

9.      As of April 27, 1997, vehicles could travel along both the east and west vehicular travel lanes of West 19th Street at the same time that a train was using the Norfolk Southern tracks.  (Morgan Depo., p. 32-33).

10.     On April 27, 1997, Norfolk Southern owned and maintained the railroad tracks and limited right of way located in the middle of West 19th Street.  (Pandlis Depo., p. 22-23, 37;

Baskin Depo., p. 9-10; Answer to Interrogatory Nos. 3-4 of Plaintiff's First Set of Interrogatories to Defendants).

11. On April 27, 1997, the City of Erie, Pennsylvania owned and maintained West 19th Street on each side of the Norfolk Southern limited right of way. (Baskin Depo., 9-10; Pandlis Depo., p. 37; Answer to Interrogatory No. 4 of Plaintiff's First Set of Interrogatories to Defendants).

12. On April 27, 1997, the track speed limit for eastbound trains traveling on the Norfolk Southern limited right of way through West 19th Street at and approaching the intersection with Sassafras Street was 15 miles per hour. (Glenn Depo., p. 12; Morgan Depo., p. 56; Glenn Depo. Ex. 1 at p. 70).

III. The April 27, 1997 Accident

13. The accident that provides the basis for this civil action occurred on Sunday, April 27, 1997, at approximately 12:24 p.m., in the vicinity of the intersection of West 19th Street and Sassafras Street in the City of Erie, Pennsylvania. (R. Nixon, p. 17-18; Affidavit of A. Baxter, ¶ 1-7; Affidavit of G. Baxter, ¶ 1-7).

14. At the time of the April 27, 1997 accident, Nixon was age 12 and was a 6th grade student at Glenwood Elementary School. (R. Nixon Depo., p. 6, 16).

15. On the morning of April 27, 1997, plaintiff Nixon's father, Ervin Nixon, Sr., gave Nixon permission to ride his bicycle to visit a friend, Christopher Houston (hereinafter "Houston"), who lived on West 21st Street between Sassafras and Peach Streets. (E. Nixon Depo., p. 13-15).

16.   When Ervin Nixon, Sr. gave this permission to his son, plaintiff Nixon, he told Nixon he was not allowed to go north of West 21st Street toward West 19th Street because of concerns about traffic and the Norfolk Southern tracks, and Nixon affirmatively acknowledged that directive from his father. (E. Nixon Depo., p. 17-18, 22).

17.   This was the third time during 1997, that Ervin Nixon, Sr. had allowed his son, plaintiff Nixon, to visit Houston at Houston's house on West 21st Street, and on each of those occasions, Ervin Nixon, Sr. told Nixon that he was not allowed to go north of West 21st Street. (E. Nixon Depo., p. 17-22).

18.   On both of the two earlier occasions during 1997, Ervin Nixon, Sr. accompanied plaintiff Nixon to Houston's house, showed Nixon where the Norfolk Southern tracks were located, and told him to stay away from the tracks. (E. Nixon Depo., p. 19-22).

19.   At the time of the April 27, 1997 accident, NS Train Y47-L2-26, owned and operated by Norfolk Southern, was traveling in an eastbound direction over the Norfolk Southern tracks at a speed at or within the track speed limit. (R. Nixon Depo., p. 28; Glenn Depo., p. 12, 28-30; Morgan Depo., p. 56; Price Depo., p. 16; Glenn Depo. Ex. 1 at p. 10, 3; Price Depo. Ex. 1; Consist for NS Train Y47-L2-26).

20.   The Norfolk Southern train consisted of three engines and 153 loaded coal cars, weighed 19,376 tons, and was 7,818 feet in length. (Affidavit of Nelson, ¶ 3 and Ex. A; Consist for NS Train Y47-L2-26).

21.   The train crew for NS Train Y47-L2-26 consisted of Timothy J. Price (hereinafter "Price), Locomotive Engineer, and Robert B. Glenn (hereinafter "Glenn"), Conductor, both of whom were located in the lead locomotive of the train. (Glenn Depo., p. 28; Price Depo., p. 16,

18; Glenn Depo. Ex. 3; Price Depo. Ex. 1; Answer to Interrogatory No. 5 of Plaintiff's First Set of Interrogatories to Defendant).

22.  Shortly before the April 27, 1997 accident, plaintiff Nixon and Houston were on the north side of the eastbound Norfolk Southern train, riding their bicycles against traffic in an easterly direction in the westbound lane of West 19th Street. (R. Nixon Depo., p. 18, 24-28, 44, 51).

23.  At a location somewhere west of Myrtle Street -- about a block and a half from Sassafras Street -- plaintiff Nixon used his right hand to grab onto a handle that was located on the side of, and to the rear of, one of the passing rail cars; had his left hand on the left handlebar; and was being pulled along by the eastbound train while riding his bicycle. (R. Nixon Depo., p. 29-35, 44; Affidavit of A. Baxter, ¶ 6; Affidavit of G. Baxter, ¶ 6).

24.  The rail car that plaintiff Nixon grabbed onto was toward the rear of the Norfolk Southern train. (Affidavit of A. Baxter, ¶ 3, 8-9; Affidavit of G. Baxter, ¶ 3, 8-9).

25.  Neither Price nor Glenn, who were located in the lead locomotive of the train, saw plaintiff Nixon or Houston riding their bicycles prior to the April 27, 1997 accident. (Glenn Depo., p. 26; Price Depo., p. 11; Answer to Interrogatory No. 8 of Plaintiff's First Set of Interrogatories to Defendant).

26.  Plaintiff Nixon does not recall seeing the locomotives at the front of the Norfolk Southern train. (R. Nixon Depo., p. 36-37).

27.  While plaintiff Nixon was still holding onto the moving train with his right hand, his bicycle began to wobble, and he fell off his bicycle in the vicinity of the intersection of West 19th Street and Sassafras Street. (R. Nixon Depo., p. 45; Affidavit of A. Baxter, ¶ 6-7; G. Baxter Affidavit, ¶ 6-7).

28.     Plaintiff Nixon does not know why he fell off his bicycle -- he only recalls holding onto the handle near the rear of one of the rail cars and then going down. (R. Nixon Depo., p. 49, 54).

29.     After plaintiff Nixon fell, the moving train severed his left foot. (R. Nixon Depo., p. 49).

30.     Neither Price nor Glenn was aware that the April 27, 1997 accident had occurred until they received a radio call from the Norfolk Southern dispatcher, when they were a "pretty fair distance" from the accident site, who informed them about the accident and directed them to stop the train. (Glenn Depo., p. 49; Glenn Depo. Ex. 3; Price Depo. Ex. 1; Affidavit of A. Baxter, ¶ 9; Affidavit of G. Baxter, ¶ 8-9).

31.     The Norfolk Southern train passed completely through the Sassafras Street intersection before it came to a stop. (Affidavit of A. Baxter, ¶ 8; Affidavit of G. Baxter, ¶ 8).

32.     Following the April 27, 1997 accident, Norfolk Southern inspected Unit 8669 -- the lead engine of NS Train Y47-L2-26 -- and there were no defects noted. (Statement of Equipment Inspection, NS Unit 8669 dated 4/27/97).

33.     The train consist of NS Train Y47-L2-26 shows that the Norfolk Southern train involved in the April 27, 1997 accident was made up of 13 different types of coal cars. (Affidavit of Nelson, ¶ 3 and Ex. A; Consist of NS Train Y47-L2-26).

34.     The 13 types of coal cars that made up the Norfolk Southern train ranged from 9 feet, 7-1/8 inches to 9 feet, 7-7/8 inches in width between the outer edges of the sill steps of the cars without considering the additional width of the ladders or hand holds that extend out from the sides of the cars. (Affidavit of Nelson, ¶ 4 and Ex. B).

35.  The width of the cars on NS Train Y47-L2-26 exceeded the width of the Norfolk Southern limited right of way through West 19th Street which was 8 feet, 6 inches from end of tie to end of tie.  (Baskin Depo., p. 9-10; Morgan Depo., p. 26, Pandlis Depo., p. 17, 22-23; Affidavit of Nelson, ¶ 4).

36.  When plaintiff Nixon was holding onto the eastbound Norfolk Southern train before he fell, he was riding his bicycle on the public street owned and maintained by the City of Erie and not on the Norfolk Southern limited right of way.  (Baskin Depo., p. 9-10; Frye Depo., p. 37-43; Morgan Depo., p. 26, Pandlis Depo., p. 17, 22-23, 37; Affidavit of Nelson, ¶ 3 and Ex. A-B).

37.  During the period from 1977 to June of 1997, David C. Morgan served as a Trainmaster for Norfolk Southern based in Conneaut, Ohio and was responsible for supervising train crews operating over the stretch of track that included the West 19th Street tracks.  (Morgan Depo., p. 7, 10, 12-13).

38.  The April 27, 1997 accident involving plaintiff Nixon was the only accident of its type that occurred along the West 19th Street tracks during the 20-year period from 1977 to June of 1997, while Morgan was Trainmaster.  (Morgan Depo., p. 42).

39.  Defendant Norfolk Southern Railway Company conducted a search of its records covering the period from January 1, 1992 to April 27, 1997, and could not locate any records of any "problems" with children grabbing onto rail cars of moving trains while riding bicycles on West 19th Street between State Street and Cherry Street; any records of children who were injured as a result of grabbing onto rail cars of moving trains while riding bicycles along West 19th Street between State Street and Cherry Street; or any records of complaints from any person or agency about children grabbing onto rail cars of moving trains while riding bicycles along

- 9 -

West 19th Street between State Street and Cherry Street.  (Answer to Interrogatory Nos. 9, 15-16 of Plaintiff's First Set of Interrogatories to Defendants).

          Respectfully submitted,

          s/ Roger H. Taft
          Roger H. Taft
          PA 19983/NY 2876456
          MacDONALD, ILLIG, JONES & BRITTON LLP
          100 State Street, Suite 700
          Erie, Pennsylvania 16507-1459
          (814) 870-7603
          (814) 454-4647 (facsimile)
          rtaft@mijb.com

          Attorneys for Defendants
             Norfolk Southern Corporation and
             Norfolk Southern Railway Company, Inc.

## **CERTIFICATE OF SERVICE**

      I hereby certify that on June 25, 2007, the foregoing Concise Statement of Material Facts in Support of Motion for Summary Judgment on Behalf of Defendants Norfolk Southern Corporation and Norfolk Southern Railway Company, Inc. was filed electronically with the Clerk of Court using the Electronic Case Filing system.  Notice of this filing will be sent to all parties by operation of the Court's ECF system and constitutes service of this filing under Rule 5(b)(2)(D) of the Federal Rules of Civil Procedure.  Parties may access this filing through the Court's ECF system.



                                                                                                    s/ Roger H. Taft
                                                                                 Roger H. Taft, Esq.