IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ROBIN NIXON, | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 05-101 ERIE |
| | ) | |
| NORFOLK SOUTHERN CORPORATION | ) | |
| and NORFOLK SOUTHERN RAILWAY | ) | |
| COMPANY, INC., | ) | |
| Defendants | ) | ELECTRONICALLY FILED |

**BRIEF IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT ON BEHALF OF
DEFENDANTS NORFOLK SOUTHERN CORPORATION
AND NORFOLK SOUTHERN RAILWAY COMPANY, INC.**

Defendants NORFOLK SOUTHERN CORPORATION and NORFOLK SOUTHERN RAILWAY COMPANY, INC., by their attorneys, MacDonald, Illig, Jones & Britton LLP, file this Brief in Support of Motion for Summary Judgment, pursuant to LR 56.1.B.2 of the Local Civil Rules of the United States District Court for the Western District of Pennsylvania:

I.    Questions Presented

      A.    WHETHER THE CITY OF ERIE, RATHER THAN NORFOLK SOUTHERN, HAD SUPREME CONTROL OVER ITS PUBLIC STREETS, AND NORFOLK SOUTHERN HAD NO RIGHT OR OBLIGATION TO MAKE CHANGES TO WEST 19TH STREET OR TO DIRECT THE MOVEMENT OF TRAFFIC THEREON?

B.      WHETHER THE "ATTRACTIVE NUISANCE" DOCTRINE DOES NOT APPLY TO THE APRIL 27, 1997 ACCIDENT BECAUSE THE NORFOLK SOUTHERN CORPORATION TRAIN WAS NOT "AN ARTIFICIAL CONDITION UPON THE LAND" AND ALSO BECAUSE NIXON HAS FAILED TO ESTABLISH ALL FIVE OF THE OTHER REQUIRED ELEMENTS OF SECTION 339 OF THE RESTATEMENT (SECOND) OF TORTS?

C.      WHETHER NIXON'S CONTENTION THAT NORFOLK SOUTHERN CORPORATION WAS NEGLIGENT IN THE DESIGN OF HANDHOLDS ON ITS RAIL CARS IS PREEMPTED BY FEDERAL LAW?

D.      WHETHER NORFOLK SOUTHERN CORPORATION CAN BE LIABLE SOLELY BECAUSE OF ITS STATUS AS THE PARENT CORPORATION OF NORFOLK SOUTHERN RAILWAY COMPANY?

II.     Statement of Facts

This civil action involves a common law negligence claim by plaintiff Robin Nixon (hereinafter "Nixon") against defendants Norfolk Southern Corporation and Norfolk Southern Railway Company, Inc. (more properly known as "Norfolk Southern Railway Company") for personal injuries arising out of an accident that occurred on or about April 27, 1997 in the City of Erie, Pennsylvania.  (Complaint).  The accident occurred when Nixon, who then was age 12, grabbed onto a slowly-moving eastbound train while riding his bicycle, lost control of his bicycle, and fell under the train.  (Complaint).

Defendants Norfolk Southern Corporation and Norfolk Southern Railway Company, Inc. incorporate herein the facts set forth in the Concise Statement of Material Facts in Support of Motion for Summary Judgment on Behalf of Defendants (hereinafter "Norfolk Southern Concise

Statement of Material Facts") filed pursuant to LR 56.1.B.1 of the Local Civil Rules of the United States District Court for the Western District of Pennsylvania.

III.     <u>Standard for Summary Judgment</u>

       A.     <u>Rule 56 Standard - Generally</u>

Rule 56 of the Federal Rules of Civil Procedure must be construed not only with due regard for the rights of plaintiffs asserting claims, but also for the rights of defendants who demonstrate, in the manner provided by the Rule, that the claims are insufficient and should be dismissed without consuming public and private resources at trial.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 327, 106 S. Ct. 2548, 2555 (1986).  See also <u>In Re School Asbestos Litigation</u>, 977 F.2d 764, 794 (3d Cir. 1992).  As stated by the United States Supreme Court:

> Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed "to secure the just, speedy and inexpensive determination of every action."

<u>Celotex Corp.</u>, 477 U.S. at 327, 106 S. Ct. at 2555.  See also Fed. R. Civ. P. 1, 56.

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment must be granted with respect to a claim:

> . . . if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed. R. Civ. P. 56(c). See also Lujan v. Nat'l Wildlife Federation, 497 U.S. 871, 884, 110 S. Ct. 3177, 3186 (1990); Celotex Corp., 477 U.S. at 322, 106 S. Ct. at 2552; Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2509-2510 (1986).

Only a genuine issue of material fact will defeat a motion for summary judgment. A disputed fact is "material" only if it would affect the outcome of the suit as determined by substantive law. Anderson, 477 U.S. at 248, 106 S. Ct. at 2510; Grassinger v. Welty, 818 F. Supp. 862, 864 (W.D. Pa. 1992), aff'd, 993 F.2d 224 (3d Cir. 1993). Factual disputes which are irrelevant or unnecessary will not be considered. Anderson, 477 U.S. at 248, 106 S. Ct. at 2510. Furthermore, an issue of fact is "genuine" only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson, 477 U.S. at 248, 106 S. Ct. at 2510; Grassinger, 818 F. Supp. at 864.

In order to avoid summary judgment, a plaintiff must point to admissible evidence sufficient to establish all elements of a prima facie case under applicable substantive law. Clark v. Modern Group Ltd., 9 F.3d 321, 326 (3d Cir. 1993). Rule 56 does "not require the moving party to negate the elements of the non-moving party's case." Lujan, 497 U.S. at 885, 110 S. Ct. at 3187; Celotex Corp., 477 U.S. at 323, 106 S. Ct. at 2553. Rather, as held by the United States Supreme Court:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

Lujan, 497 U.S. at 884, 110 S. Ct. at 3186, quoting Celotex Corp., 477 U.S. at 322, 106 S. Ct. at 2552. See also Anderson v. Consolidated Rail Corp., 297 F.3d 242, 247 (3d Cir. 2002).

IV.    <u>Argument</u>

      A.    THE CITY OF ERIE, RATHER THAN NORFOLK SOUTHERN, HAD SUPREME CONTROL OVER ITS PUBLIC STREETS, AND NORFOLK SOUTHERN HAD NO RIGHT OR OBLIGATION TO MAKE CHANGES TO WEST 19TH STREET OR TO DIRECT THE MOVEMENT OF TRAFFIC THEREON.

In his Complaint, Nixon contends that Norfolk Southern Corporation and Norfolk Southern Railway Company, Inc.[1] were negligent in failing to take certain actions on property owned and maintained by the City of Erie, Pennsylvania -- West 19th Street -- including installing traffic and/or warning signals for children traveling on bicycles; installing gates and/or other devices to prevent children from riding their bicycles parallel to the West 19th Street tracks; installing signage along West 19th Street; installing rumple strips, raised pavement markers or other devices to make it impossible or difficult for children to ride their bicycles near the tracks; installing striping and/or other warning devices along the roadway; and creating a bike path.  (Complaint, ¶ 8).  Nixon, however, is directing his fire at the wrong party.  It is the City of Erie, not Norfolk Southern, that has the supreme authority to control its public streets, and Norfolk Southern had no right, duty or obligation to alter West 19th Street as Nixon suggests.

As a threshold matter, it is critical to recognize that as of April 27, 1997, Norfolk Southern had a limited right of way through the middle of West 19th Street in the City of Erie,

---

[1]    As of April 27, 1997, the railroad tracks and limited right of way through the middle of West 19th Street were owned and maintained by Norfolk and Western Railway Company which merged into Norfolk Southern Railway Company, the surviving corporation, effective September 1, 1998.  (Norfolk Southern Concise Statement of Material Facts, ¶ 3-5).  Norfolk and Western Railway Company is hereinafter referred to as "Norfolk Southern."

Pennsylvania that was only 8 feet, 6 inches in width, and that consisted of the tracks and the area from end of tie to end of tie under the surface of the pavement. (Norfolk Southern Concise Statement of Material Facts, ¶ 6-8). The rest of West 19th Street was a public street, consisting of an eastbound lane and a westbound lane for vehicular traffic on both sides of the Norfolk Southern limited right of way, that was owned and maintained by the City of Erie. (Norfolk Southern Concise Statement of Material Facts, ¶ 6, 11). Vehicles and other traffic could utilize the public street on both sides of the tracks at the same time that Norfolk Southern operated its trains along the tracks. (Norfolk Southern Concise Statement of Material Facts, ¶ 10).

The law of Pennsylvania is clear that the City of Erie has exclusive authority over its streets including West 19th Street. As stated by the Pennsylvania Supreme Court in Ellwood Lumber Co. v. City of Pittsburgh, 112 A. 19, 20 (Pa. 1920):

> A city in its corporate capacity is vested with supreme control over its streets, including the power to determine all matters in connection with their grading and paving according to its best judgment. [Emphasis added].

See also 53 P.S. § 1721 of the General Municipal Law.

A city's supreme authority includes the right under 53 P.S. § 37915 of the Third Class City Code, applicable to the City of Erie, to keep its streets in good order and repair, in safe and passable condition, and even to close a public street when the city deems it to be for the public good. Eichenlaub v. City of Erie, 98 A. 857, 860 (Pa. 1916) (City of Erie, as third class city, has the right not only to open or extend a street, but also to close one where the City deems it expedient for the public good). Also, under 53 P.S. § 1991 of the General Municipal Law, even where a city permits railway tracks to be placed on a public street, such as West 19th Street, an action does not impair its rights, powers and privileges with respect to the public street. 53 P.S. § 1991.

- 6 -

Furthermore, a person or entity other than the City of Erie is not permitted to make changes to a city street, even at his or its own expense.  In <u>Born v. City of Pittsburgh</u>, 109 A. 614, 615 (Pa. 1920), a citizen sought a court decree against the City of Pittsburgh that would authorize him to grade and pave a city street <u>at his own expense</u>.  In denying that requested relief, the Pennsylvania Supreme Court ruled that such matters relating to city streets are, "committed wholly to the council of the city" and that the court has no power to interfere.  <u>Born</u>, 109 A. at 615.

Finally, 75 Pa.C.S.A. § 6125(a) prohibits the types of actions that Nixon claims that Norfolk Southern should have taken:

> **(a)      General rule.** - No person shall place, maintain or display upon or in view of any highway any unauthorized sign, signal, marking or device which purports to be or is an imitation of or resembles an official traffic-control device or which attempts to direct the movement of traffic, or which hides from view or interferes with the effectiveness of an official traffic-control device.

It is the City of Erie, not Norfolk Southern, that was responsible to maintain West 19th Street in a reasonably safe condition for public travel.  <u>Good v. City of Philadelphia</u>, 6 A.2d 101, 102 (Pa. 1939).  Cf. <u>Okkerse v. Howe</u>, 593 A.2d 431, 434-435 (Pa. Super. 1991) (adjoining landowner has no duty to correct a defective artificial condition on his neighbor's property).

In the present case, Nixon was riding his bicycle against traffic in the westbound lane of West 19th Street that was owned and maintained by the City of Erie, rather than on the Norfolk Southern limited right of way, when he grabbed onto the moving train, lost control of his bicycle and fell.  (Concise Statement of Material Facts, ¶ 22-23, 27, 33-36).  There is no evidence that Nixon fell from his bicycle because Norfolk Southern failed to properly maintain its limited right of way or allowed the condition of the limited right of way to deteriorate as alleged in Paragraph 8 of the Complaint.  Although Nixon stated that he does not know what caused him to fall, it is

clear that he was not riding his bicycle on the Norfolk Southern limited right of way at the time because: (1) the rail car that he was holding onto was at least 9 feet, 7-1/8 inches in width between the sills, without considering the additional width of the ladder or hand hold which Nixon was holding with his right hand or the fact that his bicycle wheel had to be even further away from the rail car; and, (2) the Norfolk Southern limited right of way was only 8 feet, 6 inches in width.  (Concise Statement of Material Facts, ¶ 28, 33-36).

Accordingly, because Nixon did not fall from his bicycle as a result of the physical condition of the Norfolk Southern limited right of way, because Norfolk Southern was not responsible to maintain West 19th Street, and because Norfolk Southern had no right or obligation to take the actions that Nixon contends should have been taken on city property to have prevented the Aprils 27, 1997 accident, summary judgment should be entered in favor of Norfolk Southern Corporation and Norfolk Southern Railway Company with respect to all claims set forth in the Complaint.

      B.     THE "ATTRACTIVE NUISANCE" DOCTRINE DOES NOT APPLY TO THE APRIL 27, 1997 ACCIDENT BECAUSE THE NORFOLK SOUTHERN CORPORATION TRAIN WAS NOT "AN ARTIFICIAL CONDITION UPON THE LAND" AND ALSO BECAUSE NIXON HAS FAILED TO ESTABLISH ALL FIVE OF THE OTHER REQUIRED ELEMENTS OF SECTION 339 OF THE <u>RESTATEMENT (SECOND) OF TORTS</u>.

Norfolk Southern Corporation and Norfolk Southern Railway Company anticipate that Nixon may contend that even though he was a minor trespasser when he grabbed onto the moving Norfolk Southern train, liability exists under <u>Restatement (Second) of Torts</u>, § 339.  This

argument fails, however, because the Norfolk Southern train was not an "artificial condition upon the land" which is a precondition for the application of Section 339. Also, Nixon has not established each and every required element under Section 339.

        1.     <u>Restatement (Second) of Torts</u>, § 339 and the
              "Attractive Nuisance" Doctrine

The Pennsylvania Supreme Court has adopted <u>Restatement of Torts</u>, § 339, superceding and supplementing what previously were known as the "attractive nuisance" doctrine and the "playground rule." <u>Jesko v. Turk</u>, 219 A.2d 591, 592 (Pa. 1966); <u>Dugan v. Pennsylvania R.R. Co.</u>, 127 A.2d 343, 346 (Pa. 1956). Section 339 of the <u>Restatement (Second) of Torts</u> provides:

> **§ 339. Artificial Conditions Highly Dangerous to Trespassing Children.**
>
> A possessor of land is subject to liability for physical harm to children trespassing thereon caused by an artificial condition upon the land if
>
> (a)    the place where the condition exists is one upon which the possessor knows or has reason to know that children are likely to trespass, and
>
> (b)    the condition is one of which the possessor knows or has reason to know and which he realizes or should realize will involve an unreasonable risk of death or serious bodily harm to such children, and
>
> (c)    the children because of their youth do not discover the condition or realize the risk involved in intermeddling with it or in coming within the area made dangerous by it, and
>
> (d)    the utility to the possessor of maintaining the condition and the burden of eliminating the danger are slight as compared with the risk to children involved, and
>
> (e)    the possessor fails to exercise reasonable care to eliminate the danger or otherwise to protect the children.

<u>Restatement (Second) of Torts</u>, § 339.

As a threshold matter, Section 339 requires that the physical harm to the trespassing minor be caused by "an artificial condition upon the land."  Restatement (Second) of Torts, § 339.  In addition, if that precondition is met, the plaintiff must establish that all five of the requirements of Section 339 be satisfied.  Jesko, 219 A.2d at 592; Goll v. Muscara, 235 A.2d 443, 445 (Pa. Super. 1967).

2.    The Moving Norfolk Southern Train was not an "Artificial Condition Upon the Land"

No Pennsylvania appellate court has held that a moving train constitutes an "artificial condition upon the land" that triggers the application of Restatement (Second) of Torts, § 339.[2] Rather, as noted by the Ohio Supreme Court in McKinney v. Hartz & Restle Realtors, Inc., 510 N.E.2d 386, 389 (Oh. 1987):

> "[t]he overwhelming weight of authority in jurisdictions [which have adopted the attractive nuisance doctrine] * * * is that the attractive nuisance exception does not apply as a matter of law in cases where child trespassers are injured by moving trains" because a moving train is not a subtle or hidden danger and its potential for causing serious bodily injury or death to anyone in its path is readily apparent, even to young children. Holland v. Baltimore & Ohio RR. Co. (D.C.App. 1981), 431 A.2d 597, 602 (en banc); see, also, Annotation (1971), 35 A.L.R.3d; Alston v. Baltimore & Ohio RR. Co. (D.D.C. 1977), 433 F. Supp. 553; Gutirrez v. Southern Pacific Co. (1959), 174 Cal. App.2d 866, 345 P.2d 326; Seiferth v. St. Louis Southwestern Ry. Co. (C.A.7, 1966), 368 F.2d 153; Nolley v. Chicago, M., St. P. & P. RR. Co. (C.A.8, 1950), 183 F.2d 566; Smith v. Illinois Cent. RR. Co. (1952), 214 Miss. 293, 58 So.2d 812. [Emphasis added].

---

[2]    In one case, Scarborough v. Lewis, 518 A.2d 563, 565, 572-573 (Pa. Super. 1986), the Pennsylvania Superior court assumed, arguendo, that Restatement (Second) of Torts, § 339 applied to a claim by a minor trespasser who was injured when he jumped off a moving train, but then held that Section 339(d) had not been satisfied as a matter of law.

For the same reasons, Section 339 should not be applied to Nixon's claim based on the injury that he sustained when grabbing onto a moving Norfolk Southern train while riding his bicycle.

>    3.    Nixon has Failed to Establish all Five of the Required Elements of <u>Restatement (Second) of Torts, § 339</u>

Even assuming, arguendo, that the moving Norfolk Southern train involved in the April 27, 1997 accident was an "artificial condition upon the land" within the meaning of <u>Restatement (Second) of Torts</u>, § 339, Nixon has failed to satisfy all five of the required elements of Section 339.[3]

First, Norfolk Southern did not know, or have reason to know, that Nixon would trespass upon its moving train by grabbing onto a rail car while riding his bike, as required by Section 339(a). The train crew were located in the lead engine of the Norfolk Southern train that was approximately one and one-half miles in length, and Nixon grabbed onto a rail car near the rear of the train. (Norfolk Southern Concise Statement of Material Facts, ¶ 20-21, 24). Neither member of the train crew saw Nixon or his friend, Christopher Houston, riding their bicycles prior to the accident. (Norfolk Southern Concise Statement of Material Facts, ¶ 25). Nixon, moreover, has no recollection of seeing the locomotive at the front of the Norfolk Southern train. (Norfolk Southern Concise Statement of Material Facts, ¶ 26). Furthermore, there had been no similar accident along West 19th Street for 20 years prior to Nixon's April 27, 1997 accident, and a search of Norfolk Southern's records from January 1, 1992 to April 27, 1997, did not disclose

---

[3]    By addressing only the requirements of Section 339(a), (c) and (d) below, Norfolk Southern Corporation and Norfolk Southern Railway Company are not conceding that Nixon has established the other two elements of Section 339.

any records of children grabbing onto rail cars of moving trains while riding their bicycles along West 19th Street between State Street and Cherry Street.  (Norfolk Southern Concise Statement of Material Facts, ¶ 37-39).

Second, Nixon failed to establish that because of his youth, he did not understand the risk involved in going near the Norfolk Southern tracks and grabbing onto a moving train while riding his bicycle, as required by Section 339(c).  As explained in Comment (j) to Section 339:

> There are many dangers, such as those of fire and water, or of falling from a height, which under ordinary conditions may reasonably be expected to be fully understood and appreciated by any child of an age to be allowed at large.  To such conditions the rule stated in this Section ordinarily has no application, in the absence of some other factor creating a special risk that the child will not avoid the danger, such as the fact that the condition is so hidden as not to be readily visible, as a distracting influence which makes it likely that the child will not discover or appreciate it.

Restatement (Second) of Torts, § 339, Comment (j).

In McHugh v. Reading Co., 30 A.2d 122, 123 (Pa. 1943), the Pennsylvania Supreme Court stated:

> No danger is more commonly realized or risk appreciated, even by children, than that of falling; consciousness of the force of gravity results almost from animal instinct.  Certainly a normal child nearly seven years of age - indeed any child old enough to be allowed at large - knows that if it steps or slips from a tree, a fence, or other elevated structure, it will fall to the ground and be hurt.  It may be that some children, while realizing the danger, will disregard it out of a spirit of bravado, or because, to use the language of the Restatement, of their 'immature recklessness,' but the possessor of land is not to be visited with responsibility for accidents due to this trait of children of the more venturesome type.  [Emphasis added].

Similarly, in Goll v. Muscara, 235 A.2d 433, 446 (Pa. Super. 1967), the Pennsylvania Superior Court stated, "[c]ertainly a normal child appreciates the force of gravity and knows instinctively that if it falls it will be hurt."

This fundamental awareness of the risk of falling applies even more in the present case where Nixon was age 12 (not age 6 as in <u>McHugh</u> or age 4 as in <u>Goll</u>) and where any person who was Nixon's age would have fallen off a bicycle before and must know that riding with only one hand on the handlebar makes the bicycle even more unstable, particularly with the other hand on a large, moving train.   (Norfolk Southern Concise Statement of Material Facts, ¶ 1).  Furthermore, Nixon's father repeatedly told him to stay away from the railroad tracks on West 19th Street, including on the day of the April 27, 1997 accident, and Nixon affirmatively acknowledged that directive.  (Norfolk Southern Concise Statement of Material Facts, ¶ 16-18).

Third, Nixon has failed to show that the utility to Norfolk Southern of continuing its train operations on West 19th Street and the burden of eliminating the danger to Nixon are slight when compared to the risk involved, as required by Section 339(d).  Pennsylvania courts repeatedly have held that train operations constitute an essential function that is vital to commerce and that outweighs the right of a minor trespasser to recover under Section 339.

In <u>Dugan v. Pennsylvania R.R. Co.</u>, 127 A.2d 343, 344 (Pa. 1956), the Supreme Court of Pennsylvania addressed a claim by a minor trespasser, age 11, who was seriously injured when he climbed onto the top of a train and came into contact with an overhead electric power line.  In rejecting the claim because of the plaintiff's failure to satisfy Section 339(d), the Pennsylvania Supreme Court noted the public interest in a possessor's free use of his land for his own purposes and that, in general, he will not be required to make his premises "child proof."  <u>Dugan</u>, 127 A.2d at 347.  The Pennsylvania Supreme Court went on to note that, "it is not obligatory on the part of the railroad to fence its right-of-way to prevent trespassing by children" and that the railroad had no obligation to patrol up and down the length of the train to protect against children who might happen to climb upon one of its cars.  <u>Dugan</u>, 127 A.2d at 348-349.  See also <u>Tiers v.</u>

Pennsylvania R.R. Co., 141 A. 487, 490 (Pa. 1928) (proper operation of trains for convenience of public would be rendered most difficult, if not impracticable, if railroad had to keep constant guard for possible presence of trespassers); Shaw v. Pennsylvania R.R. Co., 96 A.2d 923, 925-926 (Pa. 1953) (railroad has no duty to place lookouts at permissive crossing to prevent children from climbing on trains).

Similarly, in Scibelli v. Pennsylvania R.R. Co., 108 A.2d 348, 349-350 (Pa. 1954), the Pennsylvania Supreme Court addressed the application of the attractive nuisance doctrine to the claim by a minor trespasser, age 7, who suffered a severe leg injury when he fell under the wheel of a train while trying to climb onto a moving train. In response to the plaintiff's contention that the accident could have been avoided if one of the train crew had been stationed near the rear of the train, the Pennsylvania Supreme Court stated:

> Needless to say, the operation of its trains by a railroad company over its right-of-way for the transportation of freight is an essential function. It is vital to commerce, and the public as well as the railroad company has an interest therein. The maintenance of service should not be made unduly burdensome. We have been referred to no case where a court has gone so far as to require a railroad company to patrol its tracks or police its trains with a sufficient number of guards to prevent children from attempting to board them. On the contrary, other jurisdictions have held that no such duty exists. [Citations omitted]. It is difficult to conceive how a proper operation of trains for the service of the public could be maintained if the standard of responsibility contended for received countenance. [Emphasis added].

Scibelli, 108 A.2d at 352-353.

Likewise, in Scarborough by Scarborough v. Lewis, 518 A.2d 563, 565 (Pa. Super. 1986), allocator denied, 544 A.2d 961 (Pa. 1988), the Pennsylvania Superior Court reviewed a personal injury claim by a minor trespasser, age 9, who attempted to jump off a moving train and fell under the wheels, suffering amputation of both legs. In denying recovery because the minor plaintiff failed to satisfy Section 339(d), the Superior Court stated:

> We hold, in accordance with Dugan, that the utility of railroad operations and the public interest in the Railroad's free use of the right of way outweigh the risk involved.  Further, as did the court in Dugan, supra, we hold that the risk involved, although grave, could not have been obviated without serious interference with the Railroad's legitimate use of the right-of-way.

Scarborough, 518 A.2d at 573.

The Superior Court went on to state that, "it is well settled that a railroad has no duty to fence its right-of-way to prevent trespassing by children."  Scarborough, 518 A.2d at 573.  See also Dugan v. Pennsylvania R.R. Co., 127 A.2d 343, 348 (Pa. 1956), cert. denied, 353 U.S. 946, 77 S. Ct. 825 (1957); Malischewski v. Pennsylvania R.R. Co., 52 A.2d 215, 216 (Pa. 1947); Tedesco v. Reading Co., 24 A.2d 105, 108 (Pa. 1942); Noonan v. Pennsylvania R.R. Co., 194 A. 212, 214 (Pa. Super. 1937); Heller v. Consolidated Rail Corp., 576 F. Supp. 6, 11 (E.D. Pa. 1982), aff'd, 720 F.2d 662 (3d Cir. 1983).

In the present case, the Norfolk Southern limited right of way is only 8 feet, 6 inches from end of tie to end of tie, and it would be impossible to construct a fence or other barrier on both sides of that right of way to keep minor on bicycles away from moving trains and still be able to run its trains on the track.  Also, it would be wholly impracticable and unduly burdensome for Norfolk Southern to have to put a guard on both sides of every rail car or to place them along both sides of West 19th Street to make sure that no minors grab onto a moving train, some of which, like the Norfolk Southern train involved in the April 27, 1997 accident, were a mile and one-half in length.

Accordingly, Nixon has failed to satisfy all the elements of Restatement (Second) of Torts, § 339(d), and Norfolk Southern Corporation and Norfolk Southern Railway Company are entitled to summary judgment.

C.   NIXON'S CONTENTION THAT NORFOLK SOUTHERN CORPORATION WAS NEGLIGENT IN THE DESIGN OF HANDHOLDS ON ITS RAIL CARS IS PREEMPTED BY FEDERAL LAW.

In his Complaint, Nixon further contends that Norfolk Southern Corporation and Norfolk Southern Railway Company were negligent by failing to modify the design of the rail cars so as to prevent children from grabbing onto the trains.  (Complaint, ¶ 8).  This contention, however, relates to the positioning of ladders and handholds on rail cars -- a subject governed by the Federal Rail Safety Act, 49 U.S.C. § 20101, et seq., and, therefore, barred by the federal preemption doctrine.[4]

1.   The Doctrine of Federal Preemption - Generally

It is well settled that when the federal government acts within the authority that it possesses under the United States Constitution, it is empowered to preempt state laws.  City of New York v. F.C.C., 486 U.S. 57, 63, 108 S. Ct. 1637, 1642 (1988); California Federal Savings & Loan Ass'n v. Guerra, 479 U.S. 272, 280, 107 S. Ct. 683, 689 (1987).  Under the Supremacy Clause of the United States Constitution, federal law is the supreme law of the land.[5]  Northwest

---

[4]   In addition to the fact that Nixon's contention regarding the design of rail cars is preempted by federal law, there is no evidence of record to support that contention.

[5]   Clause 2 of Article VI of the U.S. Constitution provides as follows:

This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution of Laws of any State to the contrary notwithstanding.

Central Pipeline Corp. v. State Corp. Commission of Kansas, 489 U.S. 493, 509, 109 S. Ct. 1262, 1273 (1989); Rose v. Arkansas State Police, 479 U.S. 1, 3, 107 S. Ct. 334, 335 (1986). As a result, all conflicts between federal law and state law must be resolved in favor of federal law. Fidelity Federal Savings & Loan Assn. v. de la Cuesta, 458 U.S. 141, 152-153, 102 S. Ct. 3014, 3022 (1982); Burgstahler v. AcroMed Corp., 670 A.2d 658, 663 (Pa. Super. 1995), allocatur denied, 683 A.2d 875 (Pa. 1996). This is true even though a state court might disagree with the content of the federal law. Howlett by and through Howlett v. Rose, 496 U.S. 356, 371, 110 S. Ct. 2430, 2440 (1990).

Preemption may be either express or implied and "is compelled whether Congress' command is explicitly stated in the statute's language or implicitly contained in its structure and purpose." Fidelity Federal Savings & Loan Assn., 458 U.S. at 152-153, 102 S. Ct. at 3022 (quoting Jones v. Rath Packing Co., 430 U.S. 519, 525, 97 S. Ct. 1305, 1309 (1977). The most effective manner of preempting state law is where Congress' command is explicit in the federal legislation. Fetterman v. Green, 689 A.2d 289, 292 (1997), allocatur denied, 695 A.2d 786 (Pa. 1997). Where the preemption language is broad and explicit, it must be given that effect and will not be given a restrictive reading. Cipollone v. Liggett Group, Inc., 505 U.S. 504, 517, 112 S. Ct. 2608, 2618 (1992); Bunt v. Pension Mortgage Associates, Inc., 666 A.2d 1091, 1094 (1995). Further, the term "state law" has been construed to include all common law as well as statutory causes of action permitted under state law. Cipollone, 505 U.S. at 522, 112 S. Ct. at 2620; Bunt, 666 A.2d at 1094, n.4.

---

U.S. Const. art VI, cl. 2.

2.     The Federal Rail Safety Act

The Federal Rail Safety Act, 49 U.S.C. § 20101, et seq., was enacted to promote safety in every area of railroad operations and to reduce railroad related accidents.  Norfolk Southern Railroad Co. v. Shanklin, 529 U.S. 344, 347, 120 S. Ct. 1467, 1471 (2000).  Section 20302 of the Federal Rail Safety Act is also known as the Federal Safety Appliance Act (hereinafter "SAA"). The SAA and the regulations promulgated thereunder impose strict safety requirements upon railroads enacted for the protection of railroad employees.  Southern Ry. Co. v. R.R. Comm. of Indiana, 236 U.S. 439, 446, 35 S. Ct. 304, 305 (1915).

The SAA mandates the use of ladders, as well as side and end handholds, on rail cars "for greater security to individuals in coupling and uncoupling vehicles."  49 U.S.C. § 20302(a)(2). Regulations promulgated pursuant to the SAA prescribe the location, dimension and number of handholds and ladders on rail cars.  49 C.F.R. § 231.1, et seq.

In the present case, the handhold and ladder requirements set forth in the SAA and its regulations preempt Nixon's claim that Norfolk Southern should have configured the rail cars so as to prevent Nixon from grabbing onto the car.  See generally, Southern Ry. Co., 236 U.S. at 446-447, 35 S. Ct. at 305 (1915) (state law challenge to handhold requirements under the SAA was preempted); Texas & Pacific Ry. Co. v. Rigsby, 241 U.S. 33, 41-42, 36 S. Ct. 482, 487 (1916) (without express leave of Congress and in view of SAA, states cannot make or enforce inconsistent laws prescribing the character of the appliances that shall be maintained).

More specifically, the SAA preempts state law torts challenging the placement of safety appliances required by the SAA.  Oyellette v. Union Tank Car Co., 902 F. Supp. 5 (D. Mass. 1995) (state law claims of negligence, product liability, failure to warn and breach of warranty

conflicted with, and were preempted by, the SAA in a case where a railroad employee was injured and claimed that the handholds were placed in a dangerous location). See also Garay v. Missouri Pacific R.R. Co., 38 F. Supp.2d 892, 898 (D. Kan. 1999) (SAA "subsumes" and preempts the field of safety devices that are specifically listed in the Act).

Accordingly, because Norfolk Southern was required to comply with the statutory and regulatory requirements for handholds and ladders contained in the SAA, Nixon's claim that Norfolk Southern was negligent in failing to, "modify the design of its railway cars in such a manner that it would prevent children from grabbing onto its trains" is contrary to, and preempted by, federal law.

> D.   NORFOLK SOUTHERN CORPORATION CAN BE LIABLE SOLELY BECAUSE OF ITS STATUS AS THE PARENT CORPORATION OF NORFOLK SOUTHERN RAILWAY COMPANY.

In addition to the reasons set forth in Sections IV.A through IV.C above, Norfolk Southern Corporation has no liability to Nixon with respect to the April 27, 1997 accident because its status was solely that of parent company of Norfolk Southern Railway Company.

The record is clear that Norfolk Southern Corporation, a company organized and existing under the laws of the Commonwealth of Virginia, is merely a parent corporation that owns all of the shares of Norfolk Southern Railway Company, a separate corporation organized and existing under the laws of the Commonwealth of Virginia. (Norfolk Southern Concise Statement of Material Facts, ¶ 2-4). Norfolk Southern Railway Company, not Norfolk Southern Corporation, owned and maintained the limited right of way through West 19th Street at the time of the

April 27, 1997 accident. (Norfolk Southern Concise Statement of Material Facts, ¶ 10). Also, Norfolk Southern Railway Company, not Norfolk Southern Corporation, owned and operated the train involved in the April 27, 1997 accident. (Norfolk Southern Concise Statement of Material Facts, ¶ 19).

In the present case, there is no evidence whatsoever that Norfolk Southern Railway Company is merely the alter ego of Norfolk Southern Corporation or that the operation of the two separate corporations is a sham so as to warrant the extreme remedy of piercing the corporate veil. See First Realvest, Inc. v. Avery Builders, Inc., 600 A.2d 601, 604 (Pa. Super. 1991). Accordingly, Norfolk Southern Corporation is entitled to summary judgment with respect to all claims by Nixon for this additional, independent reason.

V.    Conclusion

Wherefore, defendants Norfolk Southern Corporation and Norfolk Southern Railway Company, Inc., respectfully request this Honorable Court to enter summary judgment in their favor and against plaintiff Robin Nixon with respect to all claims set forth in the Complaint.

Respectfully submitted,


_____ s/ Roger H. Taft _____
Roger H. Taft
PA 19983/NY 2876456
MacDONALD, ILLIG, JONES & BRITTON LLP
100 State Street, Suite 700
Erie, Pennsylvania 16507-1459
(814) 870-7603
(814) 454-4647 (facsimile)
rtaft@mijb.com

Attorneys for Defendants
    Norfolk Southern Corporation and
    Norfolk Southern Railway Company, Inc.

## CERTIFICATE OF SERVICE

I hereby certify that on June 25, 2007, the foregoing Brief in Support of Motion for Summary Judgment on Behalf of Defendants Norfolk Southern Corporation and Norfolk Southern Railway Company, Inc., was filed electronically with the Clerk of Court using the Electronic Case Filing system.  Notice of this filing will be sent to all parties by operation of the Court's ECF system and constitutes service of this filing under Rule 5(b)(2)(D) of the Federal Rules of Civil Procedure.  Parties may access this filing through the Court's ECF system.



s/ Roger H. Taft
Roger H. Taft, Esq.