IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OFPENNSYLVANIA

| | |
|---|---|
| ROBIN NIXON, )<br>      Plaintiff, )<br> )<br>vs. )<br> )<br>NORFOLK SOUTHERN CORPORATION )<br>and NORFOLK SOUTHERN RAILWAY )<br>COMPANY, INC. )<br>      Defendants. ) | CIVIL ACTION NO. 05-101 ERIE |

**PLAINTIFF'S BRIEF IN OPPOSITION TO THE MOTION FOR SUMMARY JUDGMENT ON BEHALF OF DEFENDANTS NORFOLK SOUTHERN CORPORATION AND NORFOLK SOUTHERN RAILWAY COMPANY, INC.**

**Statement of the Case**

On or about April 27, 1997, Robin Nixon, who was twelve years old at the time, was riding his bicycle along West 19th Street near the intersection with Sassafras Street in Erie, Pennsylvania. Robin Nixon was accompanied by his friend, Chris Houston, who was also riding his bicycle. The right-of-way of the Norfolk Southern Railway runs down the center of West 19th Street from State Street to Cranberry Street. As Robin Nixon was riding his bicycle on West 19th Street, he grabbed onto one of the cars of a passing eastbound Norfolk Southern train. He lost control of his bicycle and fell under the train and suffered serious and permanent injuries, including, but not limited to the amputation of his left foot above the ankle and a binalleolar right ankle fracture.

Plaintiff, Robin Nixon, incorporates herein the facts set forth in Plaintiff's Response to the Concise Statement of Material Facts In Support of Motion For Summary Judgment on behalf of Defendants Norfolk Southern Corporation and Norfolk Southern Railway Company, Inc.

(Plaintiff's Concise Statement of Material Facts) filed pursuant to L.R. 56.1C.1 of the Local Civil Rules of the United States District Court for the Western District of Pennsylvania.

Plaintiff initiated this action on November 29, 2004 by filing a Praecipe For Writ of Summons in the Court of Common Pleas of Erie County, Pennsylvania. Plaintiff filed his Complaint on March 2, 2005. On April 1, 2005, Defendant filed a Notice of Removal and the matter was removed to this Court.

The Pleadings are closed and discovery has been completed. Defendants have filed a Motion For Summary Judgment. Plaintiff is not contesting Defendant's contention that the railroad cannot be negligent in the design of handholds on its railcars. Nor is Plaintiff contesting Defendants' contention that Defendant, Norfolk Southern Corporation cannot be found liable in this matter solely because it is the parent company of the Norfolk Southern Railway Company.

## Issue

Whether There Is A Genuine Issue Of Material Fact As To Defendant, Norfolk Southern Railway Company, Inc.'s Negligence In This Matter Which Must Be Resolved By The Trier of Fact?

## Argument

<u>There Is A Genuine Issue Of Material Fact As To Defendant, Norfolk Southern Railway Company, Inc.'s Negligence In This Matter Which Must Be Resolved By The Trier Of Fact.</u>

Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment may only be granted:

> . . . if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

In order to withstand a motion for summary judgment, the non-moving party must make a showing sufficient to establish each element essential to that party's case, and on which the party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317 (1986). In evaluating whether the non-moving party has established each necessary element, the Court must grant all reasonable inference from the evidence to the non-moving party. Knable v. Boury Corp., 114 F.3d 407 (3rd Cir. 1997). A factual dispute is genuine if there is sufficient evidentiary basis that would allow a reasonable fact finder to return a verdict in favor of the non-moving party. Matsushite Electric Industrial Company, Ltd. v. Zenith Radio Corporation, 475 U.S. 574 (1986). The Court must resolve all doubts as to the existence of a genuine issue of material fact in favor of the non-moving party. Saldana v. K-Mart Corporation, 260 F.3d 228 (3rd Cir. 2001).

Once the moving party has shown that there is an absence of evidence to support the claims of the non-moving party, the non-moving party may not simply rest on the allegations of his Complaint. Celotex Corp. v. Catrett, supra. at 324. Instead, the moving party must go beyond the pleadings and by his own affidavits, or by depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial. Saldana v. K-Mart Corporation, supra. at 332. Summary judgment should only be granted when the non-moving party fails to make a showing sufficient to establish the existence of an element essential to the party's case and on which the party will bear the burden of proof at trial. Celotex Corp. v. Catrett, supra. at 322. Such affirmative evidence, regardless of whether it is direct or

circumstantial, must amount to more than a scintilla, but may amount to less than a preponderance. Williams v. Borough of West Chester, 891 F.2d 458 (3rd Cir. 1989).

Apply these legal standards to the facts of the instant case, Norfolk Southern's Motion For Summary Judgment must be denied.

The basis of liability of Norfolk Southern is set forth in the Restatement (Second) of Torts Section 339, which provides as follows:

> 339. Artificial Conditions Highly Dangerous to Trespassing Children.
>
> A possessor of land is subject to liability for physical harm to children trespassing thereon caused by an artificial condition upon the land if (a) the place where the condition exists is one upon which the possessor knows or has reason to know that children are likely to trespass; and (b) the condition is one of which the possessor knows or has reason to know which he realizes or should realize will involve an unreasonable risk of death or serious bodily harm to such children; and (c) the children because of their youth do not discover the condition or realize the risk involved in intermeddling with it or in coming within the area made dangerous by it; and (d) the utility to the possessor of maintaining the condition and the burden of eliminating the danger are slight as compared with the risk to children involved; and (e) the possessor fails to exercise reasonable care to eliminate the danger or otherwise to protect the children.

Section 339 of the Restatement (Second) of Torts was approved and adopted as the law of Pennsylvania by the Pennsylvania Supreme Court in Bartleson v. Glen Alden Coal Co., 64 A.2d 846 (Pa. 1949).

Before turning to the merits of Plaintiff's claim under Section 339, Plaintiff must first dispose of Norfolk Southern's contention that a moving train is not an artificial condition upon the land. According to Norfolk Southern, a moving train cannot be an artificial condition upon the land because no Pennsylvania case says that it is. Of course, Norfolk Southern overlooks the fact that no Pennsylvania case says that it is not.

The term "artificial condition" appears often in the Restatement (Second) of Torts. Unfortunately the Restatement contains no definition of the term "artificial." The few cases

4

which have interpreted the term have applied the rules of statutory construction to determine its meaning.  See, Pickarski v. Club Overlook Estates, 421 A.2d 1198 (Pa. Super. 1980).  (Applying Section 368 of the Restatement (Second) of Torts.

The "Pennsylvania Statutory Construction Act of 1972" 1 Pa. C.S. Section 1501 et seq. provides in relevant part at 1 Pa. C.S. Section 1903(a) as follows:

Section 1903.  Words and Phrases.

> (a)     General Rule. – Words and phrases shall be construed according to rules of grammar and according to their common and approved usage.

Black's Law Dictionary (Fifth Edition 1979) contains the following definition of "artificial":

> **Artificial**.  As opposed to "natural", means created or produced by man.  California Casualty Indemnity Exchange v. Industrial Accident Commission of California, 13 Cak,2d 529, 90 P.2d 289.  Created by art, or by law; existing only by force of or in contemplation of law.  Humanly contrived.  A will or contract is described as "artificially" drawn if it is couched in apt and technical phrases and exhibits a scientific arrangement.

Webster's New Dictionary And Thesaurus (1989) defines "artificial" as, inter alia "not natural."  While Webster's Ninth New Collegiate Dictionary defines the term, inter alia as "man made."  Clearly, a railroad train is an artificial condition since it is obviously "not natural" and is certainly "man made."

Turning now to the merits of Plaintiff's claim under Section 339 of the Restatement.  A party must satisfy all of the subsections of Section 339 in order to recover.  Hyndman v. Pennsylvania Railroad Co., 152 A.2d 251 (Pa. Super. 1959).  The evidence in this case will establish that Plaintiff can satisfy all of the subsections of Section 339.  The subsections of Section 339 will be addressed as they appear in Section 339.

> (a)     The place where the condition is maintained is one upon which the possessor knew or should have known that children are likely to trespass.

First, it has long been the law of Pennsylvania that when a railroad passes through a closely built-up part of a city, the railroad must exercise extreme caution and be on the alert for children playing in the area. The railroad must anticipate that children may be playing in the area around the tracks. Toner v. Pennsylvania Railroad Co., 106 A 797 (Pa. 1919) and O'Leary v. Pittsburgh & Lake Erie Railroad Co., 93A 771 (Pa. 1915).

Further, the railroad knew or had reason to know that children were likely to trespass. Robert Rockey, a Norfolk Southern employee who acted as a watchman along the West 19th Street tracks during the school year, observed children playing adjacent to the West 19th Street tracks. (Plaintiff's Concise Statement, Paragraph 47). He also saw children on bicycles grab onto trains traveling along the West 19th Street tracks. However, he did not report this fact to his supervisors or anyone else connected with the railroad. (Plaintiff's Concise Statement, Paragraph 48). David C. Morgan, the trainmaster for the area, including the West 19th Street tracks, visited the area on a number of occasions. He did not speak to anyone in the area, either Norfolk Southern watchman or residents of the area to determine whether there was a problem with children on their bicycles grabbing onto moving trains (Plaintiff's Concise Statement, Paragraph 49). Had he done so, he may well have learned that there was a problem.

(b)  The condition is one in which the possessor knows or has reason to know and which he realizes or should realize will involve an unreasonable risk of death or serious bodily harm to such children.

Clearly, Norfolk Southern should have realized that a train moving through a residential area where children were known to play near the tracks involved an unreasonable risk of death or serious bodily harm to such children.

(c)  The children, because of their youth, do not discover the condition or realize the risk involved in intermeddling with it, or in coming into the area made dangerous by it.

6

Whether the child appreciates the risk involved in coming into a dangerous area is generally for the jury. See, Peterson v. Palley Manufacturing Co., 61 A.2d 861, 865 (Pa. 1948) where the Pennsylvania Supreme Court stated:

> Generally speaking, however, the care and caution required of a child is measured by his capacity to see and appreciate danger, and he is held only to such measure of discretion as is usual in those of his age and experience; this being necessarily a varying standard, the question is ordinarily one for the jury and not for the court.
>
> (Citation omitted.)

See also, Bethany v. Philadelphia Housing Authority, 413 A.2d 710 (Pa. Super. 1979).

According to Robin Nixon, prior to the date of the accident, no one ever warned him about staying away from moving trains. He did not realize the danger of riding alongside a moving train. (Plaintiff's Concise Statement, Paragraph 59). David W. Morgan of Norfolk Southern stated that all children do not necessarily understand the danger of moving trains. (Plaintiff's Concise Statement, Paragraph 60).

> (d)    The utility to the possessor of maintaining the condition is slight, as compared to the risks to young children involved therein.

The comment to Section 339 explains Subsection (d) of the Section as follows:

> "In determining whether a particular condition maintained by a possessor upon land which he knows to be subject to the trespasses of children involves an unreasonable risk to them, the comparison of the recognizable risk to the children, with the utility to the possessor of maintaining the condition, is of peculiar importance. The public interest in the possessor's free use of his land for his own purposes is of great importance. A particular condition is, therefore, regarded as not involving unreasonable risk to trespassing children unless it involves a grave risk to them which would be obviated *without any serious interference with the possessor's legitimate use of his land.* (Emphasis Added).

Plaintiff readily concedes that the public interest is such that, in general, a possessor of land will not be required to take precautions which are so burdensome or expensive as to be unreasonable in the light of the risk, or to make the premises "child proof."

7

The Pennsylvania Supreme Court has consistently maintained a strict insistence on keeping the application of Section 339 within proper bounds.  In all cases where recovery has been allowed, there must be proof that the danger could have been eliminated with moderate cost and little effort on behalf of the defendant.  Recovery has been allowed in cases where the hazard which caused the injury was confined to a small fixed location and could have been eliminated with little effort.  Thompson v. Reading Company, 23 A.2d 729 (Pa. 1942); Allenbach v. Lehigh Valley Railroad Company, 37 A.2d 429 (Pa. 1944) and Allen v. Silverman, 50 A.2d 275 (Pa. 1942).  In the instant case, the hazard which led to the injury to Robin Nixon was confined to a small fixed location and could have been eliminated with little effort.

The location of the hazard which led to Robin Nixon's injury was a 1.2 mile stretch of Norfolk Southern which ran down the middle of West 19th Street, a public roadway within the City of Erie.  (Plaintiff's Concise Statement, Paragraph 40).  The West 19th Street tracks were unique in that they were the only tracks of the railroad which operated on a city street.  (Plaintiff's Concise Statement, Paragraph 43).

The hazard could have been reduced or eliminated by Norfolk Southern at little, if any cost.

First, Norfolk Southern could have initiated "Operation Lifesaver" within the City of Erie.  "Operation Lifesaver" was a Norfolk Southern program where the railroad sent its people into schools and local communities to talk about the dangers of trespassing on railroad property.  Despite the fact that there were 76 residences adjacent to the West 19th Street tracks and eight schools located within 1,200 feet of the line, Norfolk Southern chose not to use "Operation Lifesaver" in Erie.  (Plaintiff's Concise Statement, Paragraph 41 and 44).

Second, Norfolk Southern could have deterred children from grabbing onto moving trains while riding their bicycles along West 19th Street through the use of rumble strips adjacent to the tracks. The cost of installing rumble strips adjacent to the West 19th Street tracks would have been approximately Four Thousand Nine Hundred Seventy ($4,970.00) Dollars. The cost of maintaining the rumble strips would have been approximately Three Thousand ($3,000.00) Dollars per year. (Plaintiff's Concise Statement, Paragraph 50, 55 and 56).

Third, Norfolk Southern could have deterred children from grabbing onto moving trains while riding their bicycles along West 19th Street through the use of signs painted between the tracks stating "Danger – No Bikes". The costs of painting signs and stripes on and adjacent to the West 19th Street tracks warning people of the danger of riding bikes on or near the tracks would have been approximately Two Thousand Nine Hundred Fifty and 80/100 ($2,950.80) Dollars. (Plaintiff's Concise Statement, Paragraph 51 and 57).

Fourth, Norfolk Southern could have deterred children from grabbing onto moving trains while riding their bicycles along the West 19th Street tracks through the use of warning signs adjacent to the tracks. Plaintiff did not do a cost analysis of placing warning signs adjacent to West 19th Street, however, clearly the cost of such signs would be inconsequential. (Plaintiff's Concise Statement, Paragraph 52).

None of these methods to reduce or eliminate the hazard along the West 19th Street tracks would have in any way affected Norfolk Southern's railway operations along West 19th Street.

(e) <u>The possessor fails to exercise reasonable care to eliminate the danger or otherwise to protect the children.</u>

Not only did Norfolk Southern not exercise reasonable care to eliminate the danger or otherwise protect the children, it did absolutely nothing to eliminate the danger or otherwise protect the children.

There is ample evidence of record in this matter to create a genuine issue of material fact as to whether Plaintiff will be able to satisfy all five of the elements for liability set forth in Section 339 of the Restatement (Second) of Torts. This should end the matter and result in the denial of Norfolk Southern's Motion For Summary Judgment. Unfortunately, it does not.

Norfolk Southern argues that there is nothing that it can do in this matter to deter children from grabbing onto moving trains while riding their bicycles on West 19th Street because the City of Erie owns the street. Therefore, it has no right or obligation to do anything along its West 19th Street to protect children against the danger of moving trains.

According to Norfolk Southern, the City of Erie is the supreme authority with control over its streets and therefore there is nothing it could do in this matter. In support of this argument, it places great reliance on the case of Born v. City of Pittsburgh, 109 A 614 (Pa. 1920). According to Norfolk Southern, a person other than the municipality is not permitted to make changes to a city street even at its own expense, that is not what the case says. What the case says is that a Court may not order a municipality to authorize a citizen to grade and pave a city street, even at his own expense, and that matters relating to city streets are "committed wholly to the counsel of the city". Nowhere in Born does the Supreme Court state that a city council may not choose to authorize a citizen to pave or change the grade at his expense. Clearly, since matters relating to city streets are within the control of city council, nothing would have stopped council from authorizing Norfolk Southern to take appropriate steps to reduce the danger to children riding their bicycles adjacent to the West 19th Street tracks. Would Erie City

Council have authorized Norfolk Southern to install rumble strips or take any other action to reduce the danger to children riding their bicycles adjacent to the West 19th Street tracks? We will never know, because no one from Norfolk Southern ever bothered to contact anyone from the City of Erie to express safety concerns about children along the West 19th Street tracks. (Plaintiff's Concise Statement, Paragraph 46). No one from the railroad contacted anyone from the City of Erie to express safety concerns about children along West 19th Street because they did not believe there were any safety problems to be concerned about. Why? Because no one connected with the railroad made any effort to determine if there were any problems concerning children along the West 19th Street tracks. (Plaintiff's Concise Statement, Paragraph 49).

It is difficult to believe that if Norfolk Southern went to the City of Erie and said, "We have a problem with children grabbing onto moving trains along the West 19th Street tracks. This is what we would like to do to alleviate the problem": that the City would have said no. Especially if Norfolk Southern would be paying for the rumble strips and signs. Even if the City said no, Norfolk Southern could come before this Court and say, "We went to the City and asked for their help in alleviating the problem of children grabbing onto moving trains while riding on West 19th Street and the City said you cannot do anything along the street". Of course, Norfolk Southern never asked for the City's help. (Plaintiff's Concise Statement, Paragraph 46 and 54).

Further, Norfolk Southern argues that it could not take some of the actions because of the provisions of 75 Pa. C.S. Section 6125(a) which provides:

(a)     General Rule. No person shall place, maintain or display upon or in view of any highway any <u>unauthorized</u> sign, signal, marking or device which purports to be or is an imitation of or resembles an official traffic-control device or which attempts to direct the movement of traffic, or which hides from view or interferes with the effectiveness of an official traffic-control device. (Emphasis Added.)

11

The key word in Section 6125(a) is "unauthorized". There was nothing to stop Norfolk Southern from going to the City of Erie and asking for the authority to put up the warning signs suggested by Plaintiff. The railroad simply did not ask for such authority. (Plaintiff's Concise Statement, Paragraph 53).

Defendant argues that it could not have installed the precautionary measures indicated by Plaintiff's experts because it did not have the authority to do so. The evidence in the case does not support Defendant's argument. Photos of the intersection of West 19th Street and Sassafras clearly indicate the existence of traffic control signals and moving warning gates for southbound drivers approaching West 19th Street. These traffic control signals are clearly beyond the Defendant's right-of-way with the tracks which basically was the length of a railroad tie, approximately eight foot six inches (8' 6"). Obviously, the Defendant had no problem in securing the City of Erie's permission to install precautionary devices on city property, outside of the Defendant's right-of-way for the tracks. (See attached photographs provided by Defendants through discovery, attached hereto and marked as Exhibits "10" and "11".)

Finally, Norfolk Southern needed no authorizations to bring "Operation Lifesaver" to Erie. Again, it simply chose not to do anything to deal with the problem of children grabbing onto moving trains while riding their bicycles along West 19th Street. Except, that is, to bury its head in the sand and deny that any such problem existed.

**Conclusion**

In conclusion, for the reasons set forth in this Brief, Plaintiff, Robin Nixon, requests that Defendants' Motion For Summary Judgment be denied.

                Respectfully submitted,

                SEGEL & SOLYMOSI


                By:   s/ Tibor R. Solymosi
                      Tibor R. Solymosi, Esquire
                      Attorney for Plaintiff

                818 State Street
                Erie, Pennsylvania  16501
                Phone:  (814) 454-1500
                Fax:  (814) 454-1502

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ROBIN NIXON, ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | CIVIL ACTION NO. 05-101 ERIE |
| NORFOLK SOUTHERN CORPORATION ) | |
| and NORFOLK SOUTHERN RAILWAY ) | |
| COMPANY, INC. ) | |
| Defendants. ) | |

**CERTIFICATE OF SERVICE**

I, Tibor R. Solymosi, Esquire, hereby certify that the foregoing Plaintiff's Brief in Opposition to the Motion For Summary Judgment On Behalf of Defendants' Norfolk Southern Corporation and Norfolk Southern Railway Company, Inc., was filed electronically with the Clerk of Court using the Electronic Case Filing System on this 25th day of July, 2007.  Notice of this filing will be sent to all parties by operation of the Court's ECF system and constitutes service of this filing under Rule 5(b)(2)(D) of the federal Rules of Procedure.  Parties may access this filing through the Court's ECF system.

SEGEL & SOLYMOSI

By:  s/ Tibor R. Solymosi
    Tibor R. Solymosi, Esquire
    Attorney for Plaintiff

Roger H. Taft, Esquire
MacDONALD, ILLIG, JONES
  & BRITTON
100 State Street, Suite 700
Erie, Pennsylvania  16507