IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ROBIN NIXON, )<br>    Plaintiff )<br>                )<br>    v. )<br>                )<br>NORFOLK SOUTHERN CORPORATION )<br>and NORFOLK SOUTHERN RAILWAY )<br>COMPANY, INC., )<br>    Defendants )  | CIVIL ACTION NO. 05-101 ERIE<br><br><br>ELECTRONICALLY FILED |

**REPLY BRIEF IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT ON BEHALF OF
DEFENDANTS NORFOLK SOUTHERN CORPORATION
<u>AND NORFOLK SOUTHERN RAILWAY COMPANY, INC.</u>**

Defendants NORFOLK SOUTHERN CORPORATION and NORFOLK SOUTHERN RAILWAY COMPANY, INC., by their attorneys, MacDonald, Illig, Jones & Britton LLP, file this Reply Brief in Support of Motion for Summary Judgment on Behalf of Defendants Norfolk Southern Corporation and Norfolk Southern Railway Company, Inc., pursuant to LR 56.1D of the Local Civil Rules of the United States District Court for the Western District of Pennsylvania:

I.    <u>Introduction</u>

On July 25, 2007, plaintiff Robin Nixon (hereinafter "Nixon") filed Plaintiff's Response to Concise Statement of Material Facts in Support of Motion for Summary Judgment on Behalf

of Defendants Norfolk Southern Corporation and Norfolk Southern Railway Company, Inc. (hereinafter "Plaintiff's Response to Norfolk Southern Concise Statement"), Plaintiff's Brief In Opposition to Motion for Summary Judgment on Behalf of Defendants Norfolk Southern Corporation and Norfolk Southern Railway Company, Inc. (hereinafter "Plaintiff's Brief in Opposition"), and an Appendix to Plaintiff's Brief In Opposition to Motion for Summary Judgment on Behalf of Defendants Norfolk Southern Corporation and Norfolk Southern Railway Company, Inc. (hereinafter "Plaintiff's Appendix"). (Docket Entries).

In his opposition to the Motion for Summary Judgment on Behalf of Defendants Norfolk Southern Corporation and Norfolk Railway Company, Inc. (hereinafter "Norfolk Southern Motion for Summary Judgment"), Nixon concedes that defendants Norfolk Southern Corporation and Norfolk Southern Railway Company, Inc. (more properly known as "Norfolk Southern Railway Company") cannot be held liable based on the design of handholds on the railcars. (Plaintiff's Brief, p. 2). Nixon also concedes that there is no liability on the part of Norfolk Southern Corporation with respect to any of his claims in this civil action. (Plaintiff's Brief, p. 2.). Furthermore, Nixon admitted all facts set forth in the Norfolk Southern Concise Statement. (Plaintiff's Response to Norfolk Southern Concise Statement, ¶ 1-39).

Nixon then asserts that <u>Restatement (Second) of Torts, § 339 constitutes</u> the sole basis of liability on the part of Norfolk Southern Railway Company. (Plaintiff's Brief, p. 4-12).

This Reply Brief addresses Nixon's unsuccessful effort to make out a claim under Section 339 by ignoring unfavorable, undisputed facts of record; by relying upon inapplicable case law; and by referencing "expert" opinions that are inadmissible under Rule 702 of the Federal Rules of Evidence. Norfolk Southern Corporation and Norfolk Southern Railway Company have limited this reply to some, but not all, of Nixon's contentions and continue to rely

upon their Brief in Support of Motion for Summary Judgment (hereinafter "Defendants' Brief in Support") to counter the rest.

II.     Reply Argument

      A.     Nixon Improperly Applies The Pennsylvania Statutory Construction Act To Interpret The "Artificial Condition Upon The Land" Requirement Of Restatement (Second) Of Torts, § 339.

Nixon argues that liability exists under the "attractive nuisance" doctrine as set forth in Section 339 of the Restatement (Second) of Torts). (Plaintiff's Brief in Opposition, p. 4). Section 339 states:

> **§ 339. Artificial Conditions Highly Dangerous to Trespassing Children.**
> A possessor of land is subject to liability for physical harm to children trespassing thereon caused by an artificial condition upon the land if
>
> (a) the place where the condition exists is one upon which the possessor knows or has reason to know that children are likely to trespass, and
> (b) the condition is one of which the possessor knows or has reason to know and which he realizes or should realize will involve an unreasonable risk of death or serious bodily harm to such children, and
> (c) the children because of their youth do not discover the condition or realize the risk involved in intermeddling with it or in coming within the area made dangerous by it, and
> (d) the utility to the possessor of maintaining the condition and the burden of eliminating the danger are slight as compared with the risk to children involved, and
> (e) the possessor fails to exercise reasonable care to eliminate the danger or otherwise to protect the children.

Restatement (Second) of Torts, § 339.

As a threshold matter, Section 339 requires that the physical harm to the trespassing minor be caused by "an artificial condition upon the land." Restatement (Second) of Torts, § 339. Although Nixon correctly notes that the Restatement (Second) of Torts does not define "artificial condition upon the land" in Section 339 or elsewhere, he inaccurately cites Piekarski v. Club Overlook Estates, Inc., 421 A.2d 1198 (Pa. Super. 1980), for the proposition that courts which have interpreted the term "artificial condition" have applied the rules of statutory construction to determine its meaning. (Plaintiff's Brief in Opposition, p. 5). There is no discussion whatsoever of the Pennsylvania Statutory Construction Act, 1 Pa.C.S.A. § 1502, in Piekarski.

The Pennsylvania Statutory Construction Act, cited by Nixon, applies to: (i) statutes enacted on or after September 1, 1937; (ii) documents codified in the Pennsylvania Code; and, (3) indirectly, "[t]o any public document to the extent such document refers to and incorporates therein the provisions of" the Act. 1 Pa.C.S.A. § 1502. Restatements of the law, whether adopted by Pennsylvania courts or otherwise, are not products of the legislative process and, therefore, the Statutory Construction Act does not apply. See 1 Pa.C.S.A. § 1502.

As stated in Defendants' Brief in Support, no Pennsylvania appellate court has held that a moving train constitutes an "artificial condition upon the land" that triggers the application of Restatement (Second) of Torts, § 339. Rather, the "overwhelming weight of authority" in jurisdictions that have adopted the attractive nuisance doctrine is that Section 339 does not apply as a matter of law in cases where child trespassers are injured by moving trains. McKinney v. Hartz & Restle Realtors, Inc., 510 N.E.2d 386, 389 (Oh. 1987) (citing five cases for the proposition that the attractive nuisance doctrine does not apply as a matter of law in cases where child trespassers are injured by moving trains "because a moving train is not a subtle or hidden

danger and its potential for causing serious bodily injury or death to anyone in its path is readily apparent, even to young children"); Holland v. Baltimore & O. R. Co., 431 A.2d 597, 602 (D.C. 1981) (citing 19 cases for the proposition that the attractive nuisance doctrine does not apply as a matter of law in cases where child trespassers are injured by moving trains).  As the Holland court explained:

> [a]ccidents involving moving trains fall outside the scope of section 339 because … 'nothing could be more pregnant with warning of danger than the noise and appearance of a huge, rumbling string of railroad cars. It cannot be compared with the silent, deadly danger of high-power electricity, the inanimate attraction of stationary machines, traps or turntables, loose boards, unseen pitfalls, or the still, inviting depths of a swimming pool to a tiny child.'"

Holland, 431 A.2d 597, 602 (D.C. 1981) (quoting Herrara v. Southern Pacific Ry. Co., 188 Cal.App.2d 441, 449 (1961)).

Accordingly, Section 339 of the Restatement (Second) of Torts does not apply to Nixon's claim, and Norfolk Southern Corporation and Norfolk Southern Railway Company are entitled to summary judgment.

>  B.   As A Matter Of Law, Nixon Cannot Establish That He Did Not Realize The Risk Of Injury By Grabbing Onto A Moving Train With One Hand While Riding A Bicycle, As Required Under Restatement (Second) of Torts, § 339(c).

Subsection (c) of Section 339 requires that, "[t]he children because of their youth do not discover the condition or realize the risk involved in intermeddling with it or in coming within the area made dangerous by it."  Restatement (Second) of Torts, § 339(c).  In arguing that this requirement has been satisfied, Nixon states the general proposition that the appreciation of risk

by a child is generally for the jury and cites Nixon's own self-serving testimony that no one ever warned him about staying away from moving trains and that he did not realize the danger of riding his bicycle alongside a moving train. (Plaintiff's Brief in Opposition, p. 7). Neither point is persuasive, given the facts of the present case, because certain risks are so obvious that children are presumed to appreciate them. In other words, the duty of care set forth in Section 339 does not depend on what Nixon in fact realized, but rather upon what he should have realized.

Some risks are so obvious that children are presumed to appreciate them as a matter of law, and the question is a proper matter for the court. See generally, McHugh v. Reading Co., 30 A.2d 122, 123 (Pa. 1943); Prokop v. Becker, 29 A.2d 23, 25 (Pa. 1942). A landowner does not have a duty to warn or keep property free from conditions so obviously risky that even young children should recognize the inherent hazard involved. Restatement (Second) of Torts, § 339, Comment (j) (stating that Section 339 has no application to the many dangers that reasonably can be expected to be fully understood and appreciated by any child of an age allowed to be at large).

Furthermore, the law is clear that a reasonable child of any age appreciates the forces of gravity and knows instinctively that if he falls, he will be hurt. Restatement (Second) of Torts, § 339, Comment (j); McHugh v. Reading Co., 30 A.2d 122, 123 (Pa. 1943); Goll v. Muscara, 235 A.2d 443, 446 (Pa. Super. 1967). The risk of falling and being injured is even more obvious to a 12-year-old, such as Nixon, who is riding a bicycle with one hand on the handlebar and the other holding onto a large, rumbling, moving train.

In Prokop v. Becker, 29 A.2d 23, 25 (Pa. 1942), a 13-year-old plaintiff frequented an airplane landing field and saw numerous planes fly over the runway and land just beyond him. The Pennsylvania Supreme Court held that because the risk of being struck by a landing plane

while riding his bicycle on the runway was obvious, the minor plaintiff failed to satisfy subsection (c) of Section 339 of the Restatement as a matter of law. Prokop, 29 A.2d at 26. In explaining that a minor plaintiff's subjective knowledge is immaterial to the analysis of subsection (c), the Pennsylvania Supreme Court stated:

> The use of the verb "do" [in subsection (c)] might lead to the belief that the duty of care depended entirely upon what the child in fact realized instead of upon what he should have realized. That such is not the case, however, is readily apparent from comment b, entitled "When risk such that children can appreciate it," which states that the duty of the possessor of land is "only to keep so much of the land upon which he should recognize the likelihood of children trespassing, free from those conditions which, though observable by adults, are likely not to be observed by children or which contain risks the full extent of which an adult would realize but which are beyond the imperfect realization of children. It does not extend to those conditions the existence of which is obvious even to children and the risk of which is fully realized by them."[emphasis added].

Prokop, 29 A.2d at 25-26 .

In addition, other jurisdictions have held that moving trains present the sort of obvious hazard that children are capable of appreciating as a matter of law. See generally, Holland v. Baltimore & O. R. Co., 431 A.2d 597, 602 (D.C. 1981); Joslin v. Southern Pacific Co., 189 Cal. App. 2d 382, 386-387 (Cal. App. 1961), reversed on other grounds.

In Holland, the 9-year-old plaintiff and a friend were playing in a railroad yard when the friend hopped aboard a moving train and attempted to grab onto the plaintiff, causing the plaintiff to fall underneath the train. Holland, 431 A.2d at 600 n.4. The court ruled that the plaintiff's contention that he did not realize "the danger inherent in coming within an area made dangerous by approaching freight trains" was "deficient as a matter of law" because Section 339(c) does not apply to situations involving moving trains. Holland, 431 A.2d at 603.

- 8 -

Similarly, in <u>Joslin,</u> the 12-year-old plaintiff jumped onto a slow moving freight train which was traveling down a city street and fell under the wheels of the train. 189 Cal App.2d at 386-387. The court concluded the plaintiff could not satisfy element (c) of Section 339 as a matter of law because, "the dangers of being near a moving train, let alone attempting to board it, are so patent that we shall not burden this opinion with a discussion of them. Suffice it to say that we believe such dangers should have been obvious to a 12-year-old boy." <u>Joslin</u>, 189 Cal. App. 2d at 386.

In the present case, it is immaterial that Nixon now contends that no one ever warned him about staying away from moving trains and that he did not realize the danger of riding alongside a moving train. (Plaintiff's Response to Norfolk Southern Concise Statement, ¶ 59; Plaintiff's Brief in Opposition, p. 7). Where a danger is sufficiently obvious, a landowner does not have a duty to warn or take similar action, regardless of the statements made by the minor plaintiff, after the fact, about his state of mind. The risk of falling while riding a bicycle and holding onto a moving train with one hand is such an obvious risk that a 12-year-old, such as Nixon, should be presumed to realize that risk as a matter of law.

Accordingly, consistent with <u>Prokop</u>, <u>Holland</u>, <u>Joslin</u> and the cases cited therein, Nixon has failed to satisfy Section 339(c) of the <u>Restatement (Second) of Torts</u>, and Norfolk Southern Corporation and Norfolk Southern Railway Company are entitled to summary judgment.

  C. Nixon Has Failed To Establish That The Utility Of Continuing Norfolk Southern Train Operations On West 19th Street And The Burden Of Eliminating The Danger To Minor Trespassers Are Slight When Compared To The Risk Involved, As Required For Liability Under <u>Restatement (Second) of Torts</u>, § 339(d).

Subsection (d) of Section 339 requires Nixon to establish that, "the utility to the possessor of maintaining the condition and the burden of eliminating the danger are slight as compared with the risk to children involved."  <u>Restatement (Second) of Torts</u>, § 339(d).  In an effort to meet this requirement, Nixon argues that Norfolk Southern Railway Company could have "eliminated the danger" and deterred children from grabbing onto moving trains while riding their bicycles by installing rumble strips adjacent to the tracks; by painting warnings on the pavement between the tracks; by placing warning signs along West 19th Street and by initiating the "Operation Lifesaver" program within the City of Erie.  (Plaintiff's Brief in Opposition, p. 7-9).

The use of rumble strips and warning signs to deter children from grabbing onto moving trains is the subject of the purported "expert" testimony of August W. Westphal (hereinafter "Westphal") and James A. Guarino (hereinafter "Guarino"), Nixon's proffered expert witnesses.  (Plaintiffs' Response to Norfolk Southern Concise Statement, ¶ 50-57; Plaintiff's Brief in Opposition, p. 9).  However, under Rule 702 of the Federal Rules of Evidence, <u>Daubert v. Merrell Dow Pharmaceuticals, Inc.</u>, 509 U.S. 579, 113 S. Ct. 2786 (1993), and <u>Kumho Tire Co., Ltd. v. Carmichael</u>, 526 U.S. 137, 119 S. Ct. 1127 (1999), both Westphal and Guarino should be barred as expert witnesses and their testimony and other evidence in opposition to the Norfolk Southern Motion for Summary Judgment should be excluded as set forth in detail in Defendants'

Motion to Bar August W. Westphal as Expert Witness and to Exclude Westphal's Testimony and Other Evidence in Opposition to Defendants' Motion for Summary Judgment and Defendants' Motion to Bar James A. Guarino as Expert Witness and to Exclude Guarino's Testimony and Other Evidence in Opposition to Defendants' Motion for Summary Judgment, to be filed separately. Accordingly, there is no record evidence to support the speculative theory that the use of rumble strips and warning signs would have been effective to deter Nixon from grabbing onto the Norfolk Southern train while riding his bicycle on West 19th Street on April 27, 1997.

Further, Nixon's contention that Norfolk Southern Railway Company could have prevented Nixon's April 27, 1997 accident by initiating "Operation Lifesaver" within the City of Erie not only is pure speculation, but also is inaccurate and misleading. First, contrary to Nixon's description of Operation Lifesaver as a "Norfolk Southern program," Norfolk Southern Railway Company does not own or control Operation Lifesaver. (Plaintiff's Brief in Opposition, p. 8). Rather, as omitted by Nixon and explained by David C. Morgan, who was the Norfolk Southern Trainmaster for the area in question, Operation Lifesaver, Incorporated is a separate, independent organization. (Norfolk Southern Reply to Plaintiff's Response to Concise Statement, ¶ 44-48).[1] Its programs are funded cooperatively by federal, state and local government agencies; highway safety organizations; and various railroad companies in the United States. See <u>Branscombe v. Union Pacific R.R. Co.</u>, 2004 WL 1664687 at *3 (Cal. App. 3d 2004). Norfolk Southern Railway Company and other railway companies merely provide volunteers and funding to Operation Lifesaver. Operation Lifesaver, http://oli.org/about/overview.htm (last visited 8/8/07).

---

[1] Defendants' Reply to Plaintiff's Response to Concise Statement of Material Facts in Support of Motion for Summary Judgment on Behalf of Defendants Norfolk Southern Corporation and Norfolk Southern Railway Company, Inc. is hereinafter referred to as "Norfolk Southern Reply to Plaintiff's Response to Concise Statement."

Thus, Nixon's contentions that Norfolk Southern Railway Company could have, or should have, initiated Operation Lifesaver in the City of Erie and that Norfolk Southern Railway Company controls Operation Lifesaver's decision-making and actions are inaccurate and not of record.

Second, Norfolk Southern Railway Company cannot be held liable for not conducting or participating in such an optional, voluntary safety awareness program in every region of every state in which it has tracks or operates trains.  To hold a railroad to such a high, unrealistic standard would contravene the Pennsylvania public policy of encouraging the creation and implementation of such programs and would discourage such voluntary efforts on the part of all railroads.  See <u>Brown v. Travelers Ins. Co.</u>, 254 A.2d 27 (Pa. 1969) (holding it would contravene public policy if insurers could be held liable for failing to conduct voluntary safety inspections of workplaces and work equipment because the potential for liability would lead insurers to abandon such safety programs).

Finally, there is simply no record evidence of any kind, expert or otherwise, to support the speculative conclusion that Nixon would have attended an Operation Lifesaver program.  Furthermore, there is nothing to suggest that even if Nixon had done so, he would not have grabbed onto the Norfolk Southern train while riding his bicycle on April 27, 1997.

Accordingly, for these reasons, as well as those set forth in Defendants' Brief in Support, Nixon has failed to satisfy Section 339(d) of the <u>Restatement (Second) of Torts</u>, and Norfolk Southern Corporation and Norfolk Southern Railway Company are entitled to summary judgment.

        D.        Nixon Has Not Established That Norfolk Southern Did Not Exercise Reasonable Care To Eliminate The Danger, As Required For Liability Under <u>Restatement (Second) of Torts</u>, § 339(e), Where Norfolk Southern Had No Duty Or Right To Alter The City Of Erie's Public Street And Adjacent Property.

The final subsection of Section 339 requires Nixon to establish that "the possessor fails to exercise reasonable care to eliminate the danger or otherwise to protect the children." <u>Restatement (Second) of Torts</u>, § 339(e). Nixon returns to the argument that Norfolk Southern Railway Company should have installed rumble strips, pavement paint and warning signs and should have initiated Operation Lifesaver within the City of Erie. (Plaintiff's Brief in Opposition, p. 9-12). Again, however, there is no admissible record evidence to support the theory that the use of rumble strips and warning signs would have been feasible or effective in deterring Nixon from grabbing onto the Norfolk Southern train while riding his bicycle on April 27, 1997. Similarly, there is no record evidence of any kind, expert or otherwise, to support the theory that Operation Lifesaver would have reached Nixon or would have deterred Nixon from doing so.

Moreover, as set forth in Defendants' Brief in Support, Norfolk Southern Railway Company had *no* duty or right to alter West 19th Street, as suggested by Nixon, and the absence of such alterations does not render it liable. (Norfolk Southern Brief in Support of Motion for Summary Judgment, p. 5-8). In the context of Section 339, if "eliminating the danger" would require a possessor to alter not its own property, but the property of an *adjacent landowner,* the absence of such alterations certainly does not constitute a "failure to exercise reasonable care to eliminate the danger," as required by Section 339(e). <u>Restatement (Second) of Torts</u>, § 339(e).

In the present case, Nixon has admitted that as of April 27, 1997, Norfolk Southern Railway Company had a limited right of way through the middle of West 19th Street in the City of Erie, Pennsylvania that was only 8 feet, 6 inches in width, and that consisted of the tracks and the area from end of tie to end of tie under the surface of the pavement. (Plaintiff's Response to Norfolk Southern Concise Statement, ¶ 6-8). Nixon also has conceded that the rest of West 19th Street was a public street, consisting of an eastbound lane and a westbound lane for vehicular traffic on both sides of the Norfolk Southern limited right of way, which was owned and maintained by the City of Erie. (Plaintiff's Response to Norfolk Southern Concise Statement, ¶ 6, 11). Nixon further has agreed that vehicles and other traffic could utilize the public street on both sides of the tracks at the same time that Norfolk Southern operated its trains along the tracks. (Plaintiff's Response to Norfolk Southern Concise Statement, ¶ 10).

Despite the seemingly obvious issues raised by altering another landowner's property -- much less public property owned by a municipality -- Nixon seeks to charge Norfolk Southern Railway Company with an affirmative, legal obligation to seek permission from the City of Erie to make such alternations *without citing a single legal authority* of any kind. (Plaintiff's Brief in Opposition p. 10-12). In essence, Nixon is asking this Honorable Court to create and impose an affirmative obligation that is unrecognized by Pennsylvania courts. Taking such a scenario to its logical next step, what if the alteration itself creates or becomes a dangerous condition? In the case at hand, it is not difficult to envision a bicyclist losing his balance *because of* rumble strips placed on the road surface and then falling into the path of a moving train as a result of the very "precaution" intended to prevent such harm.

Furthermore, even if such an unprecedented obligation is imposed, Nixon has failed to cite any evidence of record that the City of Erie would have *agreed* to such alterations.  In fact, Nixon *admits* "[w]e will never know" the City's response.  (Plaintiff's Brief in Opposition, p. 11).

Finally, Nixon argues that photographs of the West 19th and Sassafras Street intersection, which show flashing lights and warning gates, infer that Norfolk Southern Railway Company secured the permission of the City of Erie to install those devices.  (Plaintiff's Brief in Opposition, p. 12).  Nixon, however, misunderstands the applicable law.

It is the Pennsylvania Public Utility Commission (hereinafter "PUC"), not the City of Erie, that has exclusive jurisdiction to regulate grade crossings and to determine the types of grade crossing controls to be installed.  66 Pa.C.S.A. § 2702(c).  See also New York Cent. R.R. Co. v. Pennsylvania Public Utility Comm., 171 A.2d 635, 636 (Pa. Super. 1961) ("In matters of this nature brought under the railroad crossings section of the Public Utility Law, 66 P.S. § 1179 et seq., the power of the commission is broad and exclusive."); City of Philadelphia v. Pennsylvania Public Utility Com'n, 458 A.2d 1026, 1029  n.1 (Pa. Cmwlth. 1983) ("It is clear that the subject of these proceedings is a highway-rail crossing and that the PUC therefore has exclusive jurisdiction to order work to be performed incident to the crossing regardless of the designation of the ownership of the highway involved.").

Accordingly, for these reasons and those set forth in Defendants' Brief in Support, Nixon has failed to satisfy Section 339(e) of the Restatement (Second) of Torts, and Norfolk Southern Corporation and Norfolk Southern Railway Company are entitled to summary judgment.

III.　Conclusion

Wherefore, defendants Norfolk Southern Corporation and Norfolk Southern Railway Company, Inc. respectfully request this Honorable Court to enter summary judgment in their favor and against plaintiff Robin Nixon with respect to all claims set forth in the Complaint.

Respectfully submitted,

　　　　　/s/ Roger H. Taft　　　　
Roger H. Taft
PA 19983/NY 2876456
MacDONALD, ILLIG, JONES & BRITTON LLP
100 State Street, Suite 700
Erie, Pennsylvania 16507-1459
(814) 870-7603
(814) 454-4647 (facsimile)
rtaft@mijb.com

Attorneys for Defendants
　　Norfolk Southern Corporation and
　　Norfolk Southern Railway Company, Inc.

**CERTIFICATE OF SERVICE**

      I hereby certify that on August 8, 2007, the foregoing Reply Brief in Support of Motion for Summary Judgment on Behalf of Defendants Norfolk Southern Corporation and Norfolk Southern Railway Company, Inc. was filed electronically with the Clerk of Court using the Electronic Case Filing system. Notice of this filing will be sent to all parties by operation of the Court's ECF system and constitutes service of this filing under Rule 5(b)(2)(D) of the Federal Rules of Civil Procedure. Parties may access this filing through the Court's ECF system.



                                                          s/ Roger H. Taft
                                                          Roger H. Taft, Esq.