IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ROBIN NIXON, | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 05-101 ERIE |
| | ) | |
| NORFOLK SOUTHERN CORPORATION | ) | |
| and NORFOLK SOUTHERN RAILWAY | ) | |
| COMPANY, INC., | ) | |
| Defendants | ) | ELECTRONICALLY FILED |

**BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO
BAR JAMES A. GUARINO AS EXPERT WITNESS
AND TO EXCLUDE GUARINO'S TESTIMONY
AND OTHER EVIDENCE IN OPPOSITION TO
<u>DEFENDANTS' MOTION FOR SUMMARY JUDGMENT</u>**

Defendants NORFOLK SOUTHERN CORPORATION and NORFOLK SOUTHERN RAILWAY COMPANY, INC., by their attorneys, MacDonald, Illig, Jones & Britton LLP, file this Brief in Support of Defendants' Motion to Bar James A. Guarino as Expert Witness and to Exclude Guarino's Testimony and Other Evidence in Opposition to Defendants' Motion for Summary Judgment:

I.    <u>Question Presented</u>

WHETHER JAMES A. GUARINO SHOULD BE BARRED AS AN EXPERT WITNESS AND HIS TESTIMONY AND OTHER EVIDENCE IN OPPOSITION TO DEFENDANTS' MOTION

FOR SUMMARY JUDGMENT SHOULD BE EXCLUDED
UNDER FED.R.EVID. 702?

II.     <u>Statement of Facts</u>

    A.     <u>Background and Relevant Procedural History</u>

This civil action involves a common law negligence claim by plaintiff Robin Nixon (hereinafter "Nixon") against defendants Norfolk Southern Corporation and Norfolk Southern Railway Company, Inc. (more properly known as "Norfolk Southern Railway Company") for personal injuries arising out of an accident that occurred on or about April 27, 1997, in the City of Erie, Pennsylvania when Nixon, who then was age 12, grabbed onto a slowly-moving eastbound train while riding his bicycle on a public street that was owned and maintained by the City of Erie, Pennsylvania; lost control of his bicycle; and fell under the train. (Complaint; Norfolk Southern Concise Statement of Material Facts and Nixon's Response, ¶ 6, 8-9, 11, 13-14, 19, 22-23, 27, 29, 36).

During the course of pretrial discovery, Nixon identified James A. Guarino (hereinafter "Guarino") as an expert witness who would testify for Nixon at trial, and Guarino submitted two expert reports -- an initial expert report dated February 12, 2007, and a supplemental expert report dated February 23, 2007 -- that included Guarino's resume, his purported expert opinions and the facts and materials upon which he relied in arriving at those opinions. (Guarino Depo. Ex. 3-4). On May 18, 2007, counsel for Norfolk Southern Corporation and Norfolk Southern Railway Company, Inc. conducted an extensive deposition of Guarino and made a detailed

inquiry into his opinions and the grounds therefor.[1]  (Guarino Depo., p. 3-70; Guarino Depo. Ex. 1-7).

On June 26, 2007, Norfolk Southern Corporation and Norfolk Southern Railway Company filed a Motion for Summary Judgment on Behalf of Defendants Norfolk Southern Corporation and Norfolk Southern Railway Company, Inc. (hereinafter "Norfolk Southern Motion for Summary Judgment"), supported by a Concise Statement of Material Facts, an Appendix, two Affidavits and a Brief.  (Docket Entries).  On July 25, 2007, Nixon filed his opposition to the Norfolk Southern Motion for Summary Judgment which relied, inter alia, upon parts of Guarino's expert report dated February 12, 2007.  (Plaintiff's Response to Defendants' Concise Statement of Material Facts, ¶ 40, 55-57; Plaintiff's Brief in Opposition to Defendants' Motion for Summary Judgment, p. 9; Appendix to Plaintiff's Brief in Opposition to Defendants' Motion for Summary Judgment, Ex. "9").

On August 8, 2007, Norfolk Southern Corporation and Norfolk Southern Railway Company filed their Reply in support of the Norfolk Southern Motion for Summary Judgment through the following papers:

(1)     Defendants' Reply to Plaintiff's Response to Concise Statement of Material Facts in Support of Motion for Summary Judgment on Behalf of Defendants Norfolk Southern;

(2)     Supplemental Appendix to Motion for Summary Judgment on Behalf of Defendants Norfolk Southern Corporation and Norfolk Southern Railway Company, Inc.; and

(3)     Reply Brief in Support of Motion for Summary Judgment on Behalf of Defendants Norfolk Southern Corporation and Norfolk Southern Railway Company, Inc.

---

[1]     The complete transcript of Guarino's deposition on May 18, 2007, and all Guarino deposition exhibits are included in the Appendix to Defendants' Motion to Bar Guarino as Expert Witness and to Exclude Guarino's Testimony and Other Evidence in Opposition to Defendants' Motion for Summary Judgment at Tabs A-H.

(Docket Entries).

On August 13, 2007, Norfolk Southern filed Defendants' Motion to Bar James A. Guarino as Expert Witness and to Exclude Guarino's Testimony and Other Evidence in Opposition to Defendants' Motion for Summary Judgment (hereinafter "Norfolk Southern Motion to Bar Guarino as Expert Witness") with supporting papers. (Docket Entries). This Motion not only seeks to bar Guarino from testifying as an expert witness at trial, but also to exclude his testimony and other evidence in opposition to the Norfolk Southern Motion for Summary Judgment.

B.    Guarino's Qualifications and Purported Expert Opinions

1.    Guarino's Background and Experience

Guarino is the owner/operator of Guarino Enterprises, a sole proprietorship engaged in the business of parking lot maintenance. (Guarino Depo., p. 5-6). On one occasion, Guarino did roadway line striping near a Wal-Mart store as a subcontractor utilizing plans and specifications prepared by others. (Guarino Depo., p. 6-7). On another occasion, he painted crosswalks for Lawrence Park Borough according to crosswalk standards. (Guarino Depo., p. 8-11).

Guarino graduated from high school in 1967, and dropped out of college after only one semester during the 1976-1977 academic year. (Guarino Depo., p. 17-18; Guarino Depo. Ex. 2). Guarino has not taken any other college courses and does not hold any licenses or certifications other than a drivers' license and a welding certificate. (Guarino Depo., p. 18-19). Guarino also is not a member of any professional organizations or societies. (Guarino Depo., p. 19). The only

seminars that he has attended were for asphalt sealing, striping, crack filling and repair through Sealmaster. (Guarino Depo. Ex. 2). Guarino has never authored or published any articles on any subjects. (Guarino Depo., p. 23).

Guarino has operated his parking lot maintenance business on a full-time basis since 1986. (Guarino Depo., p. 22; Guarino Depo. Ex. 2). Prior to 1986 and after graduating from high school, Guarino worked as a laborer for Lord Industries for a year or so; was part of a maintenance unit that placed military vehicles in "mothballs" during his military service; worked as a laborer at Hammermill Paper Company for a relatively short period of time; and then was employed as a laborer and welder at General Electric Company for 15 years. (Guarino Depo., p. 19-22; Guarino Depo. Ex. 2).

This is the first case in which Guarino has served as an expert witness. (Guarino Depo., p. 14, 22). Before his May 18, 2007 deposition, Guarino never had been deposed, and has never provided any court testimony. (Guarino Depo., p. 22-23).

Guarino self-describes his area of alleged expertise to be, "asphalt patching, preventative maintenance repairs and safety/directional striping." (Guarino Depo., p. 23; Guarino Depo. Ex. 2). Guarino admitted that he is not an expert in traffic engineering, street or roadway design, the design of effective warnings, or human factors. (Guarino Depo., p. 24). Finally, Guarino has never had any involvement with another case that dealt with a minor who was injured while riding a bicycle on a public street after grabbing onto a moving train. (Guarino Depo., p. 23).

2.      Guarino's Opinions

In his expert report dated February 12, 2007, Guarino opined that rumble strips and striping on West 19th Street outside the tracks and "Danger - No Bikes" signs inside the tracks

should have been installed, "to prevent and/or discourage children from riding along the trains and grabbing onto the train in order to be pulled along the roadway." (Guarino Depo. Ex. 3). He also estimated the cost of doing so. (Guarino Depo. Ex. 3).

          a.    <u>Rumble Strips</u>

Guarino admitted that the idea of installing rumble strips on West 19th Street originated with Nixon's attorney, Tibor R. Solymosi, Esq., who suggested above-ground rumble strips with reflectors. (Guarino Depo., p. 27-28). Guarino responded that milled rumble strips, cut into the pavement, would be more cost-effective to install and also, "would be a deterrent, because of the, you know, the shock factor." (Guarino Depo., p. 27-28).

Guarino recommended utilizing the same type of milled rumble strips that are installed along the shoulders of interstate highways to wake up "drowsy drivers." (Guarino Depo., p. 28-29, 54-55; Guarino Depo. Ex. 4). He admitted that the purpose of those rumble strips was to wake up tired drivers who were drifting onto the berm. (Guarino Depo., p. 28-29, 55). As noted above, Guarino admitted that he did not profess to be an expert in traffic engineering, street or roadway design, effective warning design or human factors. (Guarino Depo., p. 24).

Guarino could not recall seeing a single article or other published study that addressed the use of rumble strips of the type installed on interstate highways for drowsy drivers as a recommended deterrent to bicyclists who might grab onto moving trains. (Guarino Depo., p. 30-31). Guarino also admitted that he did not review any documents to arrive at his conclusion that the drowsy driver type of rumble strip used along interstate highways should have been installed on West 19th Street; rather this was the first time that he ever considered this type of deterrent. (Guarino Depo. p. 31-32).

In determining the location to place the rumble strips on West 19th Street, Guarino did a series of measurements and calculations, but claimed to have thrown all of his primary resource material away, stating that, "I keep terrible notes." (Guarino Depo., p. 13-15). Guarino prepared a handwritten diagram, included with his February 12, 2007 expert report, that he based on measuring two railcars -- a tanker and a cargo car -- even though the Norfolk Southern train involved with Nixon's accident was comprised of coal cars. (Guarino Depo., p. 34; Norfolk Southern Concise Statement of Material Facts and Nixon Response, ¶ 20). Guarino did no research to determine if tankers and cargo cars were the widest type of railcars to travel along the Norfolk Southern tracks, and he admitted that he had no basis to assume that tankers and cargo cars were standard width rail cars. (Guarino Depo., p. 34-37).

Guarino also claims to have measured the width of the handlebars of three bicycles -- two mountain bikes and one sprint bike (road bike) -- as part of his calculations, but could not identify the manufacturer of the bicycles and did not go to any bicycle stores or read any magazines or other literature to determine if there were bicycles that had wider handle bars. (Guarino Depo., p. 39). Guarino also made no effort to determine the specific type of bicycle that Nixon was riding at the time of the April 27, 1997 accident and to measure the width of its handlebars. (Guarino Depo., p. 37-39; Guarino Depo. Ex. 3).

For purposes of his calculations, Guarino assumed that, "a child would be reaching out pretty much straight forward" with his/her hand in grabbing onto the moving train. (Guarino Depo., p. 39). Guarino admitted, however, that he did not perform any tests to confirm the accuracy of that assumption. (Guarino Depo., p. 39-40). Also, he admitted that he did not observe anyone grab onto a moving train while riding a bicycle to determine whether his assumption was correct. (Guarino Depo., p. 40-41).

Furthermore, Guarino admitted that the rumble strips that he recommended be installed on West 19th Street actually could cause a minor riding a bicycle to lose control and fall down under the wheels of a moving train -- the same type of injury sustained by Nixon:

> Q    Go ahead.
>
> A    <u>What child would actually ride one hand trying to go over a rumble strip</u>?  I rode my bike and I tried to put myself in that position and it's very -- I didn't actually ride a rumble strip, but I mean if you don't have both hands on the wheel.
>
> Q    <u>You could fall down</u>?
>
> A    <u>Yes, definitely</u>.  [Emphasis added].

(Guarino Depo., p. 51).

Finally, Guarino admitted that based on his measurements and calculations, the rumble strips that he recommended be installed would be located on West 19th Street, a public street that was owned and maintained by the City of Erie, rather than on the Norfolk Southern right-of-way. (Guarino Depo., p. 55-59).

### b.    "Danger - No Bikes" Signs on Pavement

In addition to rumble strips, Guarino recommended painting, "Danger - No Bikes" signs on the pavement between the rails "in 24 inch high letters, four signs per city block, with the signs alternating so that they are legible for children traveling both directions." (Guarino Depo., Ex. 3).  Again, as noted above, Guarino admitted that he is not an expert in the design of effective warnings or in human factors, and there is nothing in his expert report that identifies the basis for this particular warning design or why it would have deterred Nixon from grabbing onto the Norfolk Southern train on April 27, 1997.  (Guarino Depo., p. 24; Guarino Depo. Ex. 3). When asked how his suggested signage would be visible to a bicyclist riding on West 19th Street

when a train was moving over the tracks, Guarino claimed that the trains are "high enough" to see underneath them and that he simply "took that into consideration," even though Guarino represented that he measured the width, but not the clearance, of only two types of rail cars, neither of which was a coal car of the type that comprised the Norfolk Southern train at issue. (Guarino Depo., p. 33-37; Guarino Depo. Ex. 3, 5).

c.    Conceptual Photograph/Diagram

Finally, Guarino prepared a conceptual photograph/diagram that purports to reflect his recommendations regarding the rumble strips, warning signs and related striping.   (Guarino Depo. Ex. 7).  Guarino admitted, however, that he was presenting only a concept, without any actual measurements or dimensions, and that his work product was not "accurate" or final. (Guarino Depo., p. 60-65).   According to Guarino, someone else would have to prepare the finished product with accurate dimensions.  (Guarino Depo., p. 64).

III.    Argument

JAMES A. GUARINO SHOULD BE BARRED AS AN EXPERT WITNESS AND HIS TESTIMONY AND OTHER EVIDENCE IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT SHOULD BE EXCLUDED UNDER FED.R.EVID. 702.

This Honorable Court should exercise its gatekeeper obligation under Rule 702 of the Federal Rules of Evidence and bar Guarino as an expert witness at trial.  The Court also should exclude Guarino's testimony and other evidence in opposition to the Norfolk Southern Motion

for Summary Judgment.  It is clear that Guarino lacks the qualifications to opine that rumble strips, warning signs and related striping should have been installed to prevent Nixon from grabbing onto the Norfolk Southern train while riding his bicycle on April 27, 1997. Furthermore, it is painfully obvious that Guarino's "methodology," or better stated, the lack thereof, fails to meet the required standard of reliability under Rule 702.  Finally, given the deficiencies regarding his opinions on the deterrent effect of his proposal, Guarino's remaining opinions regarding cost are irrelevant to the material issues in this civil action and fail to meet the "fit" test.


A.     <u>General Standard for Admissibility of Expert Testimony</u>


The admissibility of expert testimony is governed by Rule 702 of the Federal Rules of Civil Procedure which states:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed.R.Evid. 702.  Rule 702 was amended, effective December 1, 2000, in recognition of the two key United States Supreme Court decisions governing expert testimony -- <u>Daubert v. Merrell Dow Pharm., Inc.</u>, 509 U.S. 579, 113 S. Ct. 2786 (1993), and <u>Kumho Tire Co., Ltd. v. Carmichael</u>, 526 U.S. 137, 119 S. Ct. 1127 (1999).  <u>Calhoun v. Yamaha Motor Corp. U.S.A.</u>, 350 F.3d 316, 320 (3d Cir. 2003); <u>Fed.R.Evid. 702, Advisory Committee Note, 2000 Amendments</u>.

In <u>Daubert</u>, the United States Supreme Court addressed "scientific" expert testimony and stated that the District Court has an obligation to act as a gatekeeper, ensuring "that all scientific testimony or evidence admitted is not only relevant, but reliable." <u>Kumho Tire Co., Ltd.</u>, 526 U.S. at 139, 147, 119 S. Ct. at 1171, 1174; <u>Daubert</u>, 509 U.S. at 589, 113 S. Ct. at 2795. In <u>Kumho Tire Co., Ltd.</u>, the Supreme Court confirmed that this gatekeeping obligation also applied to expert testimony based on "technical" and "other specialized knowledge." <u>Kumho Tire Co., Ltd.</u>, 526 U.S. at 140, 147; 119 S. Ct. at 1171, 1174; <u>Calhoun</u>, 350 F.3d at 320-321.

The District Court exercises its gatekeeping obligation through Rule 104(a) of the Federal Rules of Evidence which states:

> (a) **Questions of admissibility generally.** Preliminary questions concerning the qualification of a person to be a witness, the existence of a privilege, or the admissibility of evidence shall be determined by the court, subject to the provisions of subdivision (b). In making its determination it is not bound by the rules of evidence except those with respect to privileges.

Fed.R.Evid. 104(a); <u>Daubert</u>, 509 U.S. at 592 and n.10, 113 S. Ct. at 2796 and n.10.

An abuse of discretion standard applies to the decision whether to admit or exclude expert evidence. <u>Kumho Tire Co., Ltd.</u>, 526 U.S. at 152, 119 S. Ct. at 1176; <u>Gen. Elec. Co. v. Joiner</u>, 522 U.S. 136, 146, 118 S. Ct. 512, 519 (1997). Furthermore, the District Court also has broad latitude in deciding <u>how</u> to determine whether the proferred expert's testimony is reliable. <u>Kumho Tire Co., Ltd.</u>, 526 U.S. at 142, 119 S. Ct. at 1171, 1176. This includes whether to apply any of the specific <u>Daubert</u> factors -- described as not constituting a "definitive checklist or test" -- in any particular case. <u>Kumho Tire Co., Ltd.</u>, 526 U.S. at 149-150, 153, 119 S. Ct. at 1175-1176.

In fulfilling its obligation as gatekeeper with respect to expert evidence, the District Court is not required to hold an <u>in limine</u> hearing. <u>Oddi v. Ford Motor Co.</u>, 234 F.3d 136, 151-155 (3d

Cir. 2000), <u>cert. denied</u>, 532 U.S. 921 (2001); <u>Kerrigan v. Maxon Indus., Inc.</u>, 223 F. Supp.2d 626, 632-634 (E.D. Pa. 2002).  See also <u>Kumho Tire Co., Ltd.</u>, 526 U.S. at 152-155, 119 S. Ct. at 1176-1178 (trial judge properly exercised gatekeeper function based on expert's deposition testimony without holding <u>in</u> <u>limine</u> hearing).  Rather, in exercising its broad discretion in deciding <u>how</u> to decide whether expert testimony is admissible, the court can conclude that there is a sufficient basis for its evidentiary ruling in the expert's curriculum vitae, expert report, deposition testimony and other materials of record.  <u>Oddi</u>, 234 F.3d at 153-154; <u>Kerrigan</u>, 223 F. Supp.2d at 634.

Finally, the burden of establishing the admissibility of expert evidence is on the party who proffers the expert.  <u>Daubert</u>, 509 U.S. at 592 n.10; 113 S. Ct. at 2796 n.10.  In the present case, that burden rests with Nixon.


B.     <u>Third Circuit Court of Appeals Trilogy of Restrictions</u>


The Third Circuit Court of Appeals utilizes a "trilogy" of restrictions in determining whether expert testimony is admissible under Rule 702: (1) qualification; (2) reliability; and (3) fit.  <u>Calhoun</u>, 350 F.3d at 321.  First, the proffered expert must be qualified to express an expert opinion.  This means that he must possess the specialized expertise by knowledge, skills or training with respect to the specific area of his intended testimony.  <u>Calhoun</u>, 350 F.3d at 321; <u>Pineda v. Ford Motor Co.</u>, 2006 WL 3337488 at *3 (E.D. Pa. 2006).  Although this requirement is interpreted liberally to include practical experience and/or academic training and credentials, the Third Circuit Court has made clear that its policy is <u>not</u> to qualify every proffered witness as an expert.  See <u>Waldorf v. Shuta</u>, 142 F.3d 601, 625 (3d Cir. 1998); <u>Surace v. Caterpillar, Inc.</u>,

111 F.3d 1039, 1055-1056 (3d Cir. 1997); Aloe Coal Co. v. Clark Equip. Co., 816 F.2d 110, 114-115 (3d Cir. 1987), cert denied, 484 U.S. 853 (1987).

Second, the testimony of the proffered expert must be reliable.  This means that the expert's opinion must have a reliable basis in the knowledge and experience of the relevant discipline, i.e. that there be "good grounds" for the expert opinion.  Kumho Tire Co., Ltd., 526 U.S. at 149, 119 S. Ct. at 1175; Daubert, 509 U.S. at 589, 113 S. Ct. at 2295; Calhoun, 350 F.3d at 321.  The test is whether the particular opinion is based on "valid reasoning and reliable methodology."  Oddi, 234 F.3d at 146, citing Kannankeril v. Terminex Int'l Inc., 128 F.3d 802, 806 (3d Cir. 1997).  To be considered "reliable," an expert's opinion must be grounded on, "reliable principles and methods" as opposed to "subjective belief or unsupported speculation."  Daubert, 509 U.S. at 590, 113 S. Ct. at 2795; Calhoun, 350 F.3d at 321; Mause v. Global Household Brands, Inc., 2003 WL 224160000 at *1 (E.D. Pa. 2003).  Whether the expert testimony is based upon professional studies or personal experience, the proffered expert must employ, "the same level of intellectual rigor that characterizes the practice of an expert in the relevant field."  Kumho Tire Co., Ltd., 526 U.S. at 152, 119 S. Ct. at 1176.

Third, there must be a valid connection between the expert testimony and the material facts of the particular case to satisfy the "fit" requirement.  Daubert, 509 U.S. at 591, 113 S. Ct. at 2796; Calhoun, 350 F.3d at 321; Kerrigan, 223 F. Supp.2d at 638-639.  This requirement is similar in concept to relevance.  Calhoun, 350 F.3d at 321.

C.     Guarino Lacks the Required Qualifications to Serve as an Expert
       Witness

It is crystal clear when applying the requirements of Rule 702 of the Federal Rules of
Evidence that Guarino is not qualified by knowledge, skill, experience, training or education to
present his opinions that the installation of rumble strips, warning signs and related striping
would have been an appropriate, effective means to deter Nixon from grabbing onto the Norfolk
Southern train while riding his bicycle on April 27, 1997. To the contrary, Guarino has admitted
his lack of qualifications. That, in itself, should bar Guarino from serving as an expert witness in
this civil action.

Guarino is the sole proprietor of a parking lot maintenance business and expressly
described his area of alleged expertise to be, "asphalt patching, preventative maintenance repairs
and safety/directional striping." (Guarino Depo., p. 5-6, 23; Guarino Ex. 2). More importantly,
although he seeks to opine regarding a first-time design and installation of rumble strips, warning
signs and related striping to deter persons riding bicycles on a city street from grabbing onto
moving trains, Guarino admits that he is not an expert in traffic engineering, is not an expert in
street or roadway design, is not an expert in the design of effective warnings, and is not an expert
in human factors. (Guarino Depo., p. 23-24).

Guarino has never served before as an expert witness and has never been deposed or
given court testimony in any case. (Guarino Depo., p. 14, 22-23). Guarino has only a high
school education, dropping out of college after the first semester. (Guarino Depo., p. 17-19;
Guarino Depo. Ex. 2). He holds no professional license or certifications, is not a member of any
professional organizations or societies, and has never authored or published any articles on any

subjects.  (Guarino Depo., p. 18-19, 23; Guarino Depo. Ex. 2).  Guarino also has never attended seminars other than those related to asphalt sealing and repair for his parking lot maintenance business.  (Guarino Depo., Ex. 2).

Finally, Guarino's lack of qualifications is underscored by the fact that his purported expert opinions actually originated with Nixon's attorney who suggested the rumble strip concept.  (Guarino Depo., p. 27-28).  Guarino merely suggested that milled rumble strips -- the type cut into the pavement -- would be more "cost effective" than the above-ground type suggested by Nixon's attorney; and Guarino then borrowed a design developed for a completely different purpose on interstate highways -- to wake drowsy drivers.  (Guarino Depo., p. 27-29, 54-55; Guarino Depo. Ex. 4).

Specialized knowledge, in and of itself, is insufficient to satisfy the qualification requirement of Rule 702.  Rather, the proffered expert must have the requisite education, training or experience with respect to the specific area of his intended expert testimony.  See, e.g., Calhoun v. Yamaha Motor Corp. U.S.A., 350 F.3d 316, 322 (3d Cir. 2003) (expert may be generally qualified, but may lack qualifications to testify outside his area of expertise); Kerrigan v. Maxon Indus., Inc., 223 F. Supp.2d 626, 635-636 (E.D. Pa. 2002) (criteria required to qualify an expert witness turns largely on subject matter of particular opinion to be offered); Fedor v. Freightliner, Inc., 193 F. Supp.2d 820, 828 (E.D. Pa. 2002) (Rule 702 requires proffered expert to have specialized knowledge relating to his area of expertise).

Based on his own admissions, Guarino does not have the requisite qualifications to opine regarding the design and installation of effective deterrents -- be they rumble strips or warning signs and related striping -- to prevent bicyclists, such as Nixon, from grabbing onto a moving train while riding on a public street.  As with the proffered expert who was barred in Surace v.

- 15 -

Caterpillar, Inc., 111 F.3d 1039, 1055-1056 (3d Cir. 1997), Guarino has admitted that he does not have expertise in human factors.  Also, as with the proffered expert who was barred in Pineda v. Ford Motor Co., 2006 WL 3337488 at *4 (E.D. Pa. 2006), Guarino admitted that he does not qualify as a warnings expert.  Finally, as with the proffered expert who was barred in Aloe Coal Co. v. Clark Equip. Co., 816 F.2d 110, 114-115 (3d Cir. 1987), cert. denied, 484 U.S. 853 (1987), it is clear that Guarino is not qualified to opine regarding rumble strips, warning signs and related striping as a deterrent to bicyclists grabbing onto moving trains based on a total lack of training and experience in the design of those items for that particular use.

In short, Guarino miserably fails the qualification requirement of Rule 702.  Accordingly, he should be barred as an expert witness and his testimony and other evidence in opposition to the Norfolk Southern Motion for Summary Judgment should be excluded.

D.    Guarino's Opinions Lack the Required Degree of Reliability

It also is crystal clear that Guarino's opinions regarding the installation of rumble strips, warning signs and related striping as an appropriate, effective deterrent to persons, such as Nixon, who otherwise would grab onto a moving train while riding a bicycle, fall far short of satisfying the reliability requirement of Rule 702.  To the contrary, Guarino admitted that his opinions arise from a fundamentally flawed methodology that can be easily rejected.

As noted above, the rumble strips idea actually came from Nixon's attorney.  (Guarino Depo., p. 27-28).  Guarino then recommended the use of milled rumble strips that were cut into the pavement as being more "cost effective."  (Guarino Depo., p. 27-28).  Next, Guarino merely adopted the identified type of rumble strips used for a different purpose on interstate highways --

those designed to wake up "drowsy drivers" -- for use on West 19th Street to deter bicyclists from grabbing onto moving trains.  (Guarino Depo., p. 28-29, 54-55; Guarino Depo. Ex. 4).

Guarino admitted that he did not review any documents to arrive at this opinion. (Guarino Depo., p. 31-32).  Guarino also admitted that he could not recall seeing a single article or other published study that addressed the use of interstate highway rumble strips for drowsy drivers in the specific application of this case -- deterring bicyclists from grabbing onto moving trains.  (Guarino Depo., p. 30-31).  This was the first time that Guarino ever considered this type of deterrent.  (Guarino Depo., p. 31-32).

Furthermore, Guarino's "methodology" in arriving at his opinions regarding rumble strips, warning signs and related striping is woefully inadequate and falls far short of the "same level of intellectual rigor that characterizes the practice of an expert in the relevant field." Kumho Tire Co., Ltd v. Carmichael, 526 U.S. 137, 152, 119 S. Ct. 1127, 1176 (1999).  Guarino admitted that he threw all of his primary resource material away because, "I keep terrible notes." (Guarino Depo., p. 13-15).  Also, in making measurements and calculations to determine the size and location of the rumble strips to be installed on West 19th Street, Guarino admitted that he measured only two types of railcars, neither of which were of the type that comprised the Norfolk Southern train involved with the Nixon accident; measured only three bicycles that he could not identify by manufacturer without any effort to determine if they were the same type as the one that Nixon was riding at the time of the accident; and concluded that a bicyclist "would be reaching out pretty much straightforward when grabbing onto a moving train without performing any tests or observing anyone grab onto a moving train to confirm that assumption." (Guarino Depo., p. 34-41; Guarino Depo Ex. 3; Norfolk Southern Concise Statement of Material Facts and Nixon Response, ¶ 20).  Guarino also admitted that he had no identifiable grounds for

concluding that the use of "Danger - No Bikes" warning signs between the rails would have deterred Nixon or any other bicyclist when a train was traveling over the tracks; rather, Guarino merely thought that the rail cars would have been "high enough" for a bicycle to see and understand the warning even though he did not measure the clearance of any rail cars.  (Guarino Depo., p. 33-37; Guarino Depo. Ex. 3, 5).

Guarino also admitted that he did not consider the fact that his proposed rumble strip design could actually result in the same type of accident sustained by Nixon by causing a minor to lose control of his bicycle and fall under a moving train.  (Guarino Depo., p. 51).  Rather, Guarino applied a gut-level, instinctive reaction that the rumble strips would work because of the "shock factor."  (Guarino Depo., p. 27-28).

As nicely explained by the Third Circuit Court in Oddi v. Ford Motor Co., 234 F.3d 136, 156 (3d Cir. 2000), cert. denied, 532 U.S. 921 (2001), in rejecting proffered expert testimony based on untested hypotheses, "[a]lthough Daubert does not require a paradigm of scientific inquiry as a condition precedent to admitting expert testimony, it does require more than the haphazard, intuitive inquiry that [the proffered expert] engaged in.  [Emphasis added]"  Courts consistently have held that the gatekeeper obligation under Rule 702 requires the exclusion of purported expert testimony that is based on subjective belief and unsupported speculation rather than on the requisite methodology to ensure reliability.  See Willis v. Besam Automated Entrance Sys., Inc., 2005 WL 2902494 at *6 (E.D. Pa. 2005) (excluded expert used little, if any, methodology beyond his own intuition); Bethea v. Bristol Lodge Corp., 2002 WL 31859434 at *5 (E.D. Pa. 2002) (excluded expert provided no more than "instinctive reaction" and did not base opinions on reliable methodology).  See also Citizens Fin. Group, Inc. v. Citizens Nat'l

Bank of Evans City, 383 F.3d 110, 121 (3d Cir. 2004), cert. denied, 544 U.S. 1018 (2005) (expert testimony based on fundamentally flawed methodology was properly excluded).

Finally, Guarino's testimony regarding the installation of rumble strips, warnings and related striping to deter bicyclists from grabbing onto moving trains should be excluded because he has failed to establish a causal link to substantiate his opinions. See Mause v. Global Household Bands, Inc., 2003 WL 22416000 at *6 (E.D. Pa. 2003). Guarino has failed to point to anything, other than his own subjective opinion, to support the contention that his recommendations would have effectively deterred Nixon's April 27, 1997.

      E.     Guarino's Opinions are Irrelevant to the Material Issues in This Civil Action

Finally, Guarino's opinions are irrelevant to the material issues in this civil action for the reasons set forth in the Norfolk Southern Motion for Summary Judgment and its supporting briefs and other materials. Guarino admitted that the rumble strips and related striping that he recommended would have to be installed on West 19th Street -- a public street that was owned and maintained by the City of Erie, rather than on the Norfolk Southern right-of-way -- and yet Norfolk Southern Corporation and Norfolk Southern Railway Company have no right or obligation to do so on City property. (Guarino Depo., p. 55-99).

Also, the sole legal basis for Nixon's claim against Norfolk Southern Corporation and Norfolk Southern Railway Company -- Restatement (Second) of Torts, § 339 -- has no application to the facts of this case. (Norfolk Southern Motion for Summary Judgment, Norfolk Southern Brief, and Norfolk Southern Reply Brief). Norfolk Southern Corporation and Norfolk

Southern Railway Company, therefore, had no duty to install "Danger - No Bikes" signs between the rails even assuming, <u>arguendo</u>, that the cost to do so would be "insignificant."

Accordingly, Guarino's proffered expert testimony is irrelevant and also fails to meet the "fit" test.

IV.     <u>Conclusion</u>

Wherefore, defendants Norfolk Southern Corporation and Norfolk Southern Railway Company, Inc., respectfully request this Honorable Court to bar James A. Guarino from serving as an expert witness at trial and to exclude his testimony and other evidence in opposition to the Motion for Summary Judgment on Behalf of Defendants Norfolk Southern Corporation and Norfolk Southern Railway Company, Inc.

Respectfully submitted,

s/ Roger H. Taft
_____
Roger H. Taft
PA 19983/NY 2876456
MacDONALD, ILLIG, JONES & BRITTON LLP
100 State Street, Suite 700
Erie, Pennsylvania 16507-1459
(814) 870-7603
(814) 454-4647 (facsimile)
rtaft@mijb.com

Attorneys for Defendants
     Norfolk Southern Corporation and
     Norfolk Southern Railway Company, Inc.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 13, 2007, the foregoing Brief in Support of Defendants' Motion to Bar James A. Guarino as Expert Witness and to Exclude Guarino's Testimony and Other Evidence in Opposition to Defendants' Motion for Summary Judgment was filed electronically with the Clerk of Court using the Electronic Case Filing system.  Notice of this filing will be sent to all parties by operation of the Court's ECF system and constitutes service of this filing under Rule 5(b)(2)(D) of the Federal Rules of Civil Procedure.  Parties may access this filing through the Court's ECF system.


s/ Roger H. Taft
Roger H. Taft, Esq.