IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ROBIN NIXON, | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 05-101 ERIE |
| | ) | |
| NORFOLK SOUTHERN CORPORATION | ) | |
| and NORFOLK SOUTHERN RAILWAY | ) | |
| COMPANY, INC., | ) | |
| Defendants | ) | ELECTRONICALLY FILED |

## JOINT CONCISE STATEMENT OF MATERIAL FACTS

Plaintiff ROBIN NIXON, by his attorneys, Segel & Solymosi, and defendants NORFOLK SOUTHERN CORPORATION and NORFOLK SOUTHERN RAILWAY COMPANY, INC. (more properly known as "Norfolk Southern Railway Company"), by their attorneys, MacDonald, Illig, Jones & Britton LLP, file this Joint Concise Statement of Material Facts, pursuant to the Case Management Order dated June 20, 2005, as amended, setting forth their respective Concise Statements of Material Facts and the Responses thereto in connection with the Motion for Summary Judgment on Behalf of Defendants Norfolk Southern Corporation and Norfolk Southern Railway Company filed on June 25, 2007:

I.     **Defendants' Concise Statement of Material Facts and Plaintiff's Responses**

I.     The Parties

1.     Plaintiff Robin Nixon (hereinafter "Nixon") is an individual who claims to reside at 3603 Peach Street, Erie, Pennsylvania 16508 and who has a date of birth of December 3, 1984. (Nixon Depo., p. 3, 6).

RESPONSE:   Admitted.

2.     Defendant Norfolk Southern Corporation is a corporation organized and existing under the laws of the Commonwealth of Virginia with its principal place of business in Norfolk, Virginia.  (Notice of Removal, ¶ 46).

RESPONSE:   Admitted.

3.     Defendant Norfolk Southern Railway Company, Inc. (more properly known as "Norfolk Southern Railway Company") is a corporation organized and existing under the laws of the Commonwealth of Virginia with its principal place of business in Norfolk, Virginia.  (Notice of Removal, ¶ 4; Certificate of Merger dated 9/1/98 and related Articles of Merger of Norfolk and Western Railway Company into Norfolk Southern Railway Company).

RESPONSE:   Admitted.

4.     Defendant Norfolk Southern Corporation is the parent corporation of defendant Norfolk Southern Railway Company and owns all of the shares of Norfolk Southern Railway

Company.   (Disclosure Statement of Defendant Norfolk Southern Railway Company, Inc.; Pandlis Depo., p. 14-15).

      RESPONSE:   Admitted.


5.      Effective September 1, 1998, Norfolk and Western Railway Company merged into defendant Norfolk Southern Railway Company, the surviving corporation, and everything under the control of Norfolk and Western Railway Company became the property of Norfolk Southern Railway Company.[1]   (Pandlis Depo., p. 21-23, 25-26; Certificate of Merger dated 9/1/98 and related Articles of Merger of Norfolk and Western Railway Company into Norfolk Southern Railway Company).

      RESPONSE:   Admitted.


II.    West 19th Street and Norfolk Southern's Limited Right of Way


6.      On April 27, 1997, West 19th Street in the City of Erie, Pennsylvania was a public street with an asphalt surface that ran in a generally east-west direction; that had a single set of railroad tracks on a limited right of way which also ran in a generally east-west direction through the middle of the street; and that had a westbound lane on the north side of the tracks and an eastbound lane on the south side of the tracks for vehicular and other traffic.  (Baskin Depo, p. 7; Morgan Depo., p. 15-16; Price Depo., p. 7-8; R. Nixon Depo., p. 26-27, 47; Affidavit of A. Baxter, ¶ 3; Affidavit of G. Baxter, ¶ 3).

---

[1]    Norfolk and Western Railway Company, which merged into Norfolk Southern Railway Company, the surviving corporation, effective September 1, 1998, is hereinafter referred to as "Norfolk Southern."

RESPONSE:  Admitted.


7.      On April 27, 1997, there was a sidewalk along West 19th Street. (Baskin Depo., p. 18).

RESPONSE:  Admitted.


8.      The Norfolk Southern limited right of way, including the railroad tracks, extended from the ends of the ties to the ends of the ties and was 8 feet, 6 inches in width.  (Baskin Depo., p. 9-10; Morgan Depo., p. 26; Pandlis Depo., p. 17, 22-23).

RESPONSE:  Admitted.


9.      As of April 27, 1997, vehicles could travel along both the east and west vehicular travel lanes of West 19th Street at the same time that a train was using the Norfolk Southern tracks.  (Morgan Depo., p. 32-33).

RESPONSE:  Admitted.


10.      On April 27, 1997, Norfolk Southern owned and maintained the railroad tracks and limited right of way located in the middle of West 19th Street.  (Pandlis Depo., p. 22-23, 37; Baskin Depo., p. 9-10; Answer to Interrogatory Nos. 3-4 of Plaintiff's First Set of Interrogatories to Defendants).

RESPONSE:  Admitted.

11.     On April 27, 1997, the City of Erie, Pennsylvania owned and maintained West 19th Street on each side of the Norfolk Southern limited right of way.  (Baskin Depo., 9-10; Pandlis Depo., p. 37; Answer to Interrogatory No. 4 of Plaintiff's First Set of Interrogatories to Defendants).

        RESPONSE:  Admitted.


12.     On April 27, 1997, the track speed limit for eastbound trains traveling on the Norfolk Southern limited right of way through West 19th Street at and approaching the intersection with Sassafras Street was 15 miles per hour.  (Glenn Depo., p. 12; Morgan Depo., p. 56; Glenn Depo. Ex. 1 at p. 70).

        RESPONSE:  Admitted.


III.    The April 27, 1997 Accident


13.     The accident that provides the basis for this civil action occurred on Sunday, April 27, 1997, at approximately 12:24 p.m., in the vicinity of the intersection of West 19th Street and Sassafras Street in the City of Erie, Pennsylvania.  (R. Nixon, p. 17-18; Affidavit of A. Baxter, ¶ 1-7; Affidavit of G. Baxter, ¶ 1-7).

        RESPONSE:  Admitted.


14.     At the time of the April 27, 1997 accident, Nixon was age 12 and was a 6th grade student at Glenwood Elementary School.  (R. Nixon Depo., p. 6, 16).

        RESPONSE:  Admitted.

15.     On the morning of April 27, 1997, plaintiff Nixon's father, Ervin Nixon, Sr., gave Nixon permission to ride his bicycle to visit a friend, Christopher Houston (hereinafter "Houston"), who lived on West 21st Street between Sassafras and Peach Streets.  (E. Nixon Depo., p. 13-15).

RESPONSE:  Admitted.


16.     When Ervin Nixon, Sr. gave this permission to his son, plaintiff Nixon, he told Nixon he was not allowed to go north of West 21st Street toward West 19th Street because of concerns about traffic and the Norfolk Southern tracks, and Nixon affirmatively acknowledged that directive from his father.  (E. Nixon Depo., p. 17-18, 22).

RESPONSE:  Admitted.


17.     This was the third time during 1997, that Ervin Nixon, Sr. had allowed his son, plaintiff Nixon, to visit Houston at Houston's house on West 21st Street, and on each of those occasions, Ervin Nixon, Sr. told Nixon that he was not allowed to go north of West 21st Street. (E. Nixon Depo., p. 17-22).

RESPONSE:  Admitted.


18.     On both of the two earlier occasions during 1997, Ervin Nixon, Sr. accompanied plaintiff Nixon to Houston's house, showed Nixon where the Norfolk Southern tracks were located, and told him to stay away from the tracks.  (E. Nixon Depo., p. 19-22).

RESPONSE:  Admitted.  In further response, Ervin Nixon, Sr. was concerned about his son crossing the 19th Street tracks.  There is nothing in the record to indicate that he

ever warned his son about the dangers of riding his bike near to or grabbing onto a handrail on a moving train. (E. Nixon Depo., pp. 17-21).

19.    At the time of the April 27, 1997 accident, NS Train Y47-L2-26, owned and operated by Norfolk Southern, was traveling in an eastbound direction over the Norfolk Southern tracks at a speed at or within the track speed limit. (R. Nixon Depo., p. 28; Glenn Depo., p. 12, 28-30; Morgan Depo., p. 56; Price Depo., p. 16; Glenn Depo. Ex. 1 at p. 10, 3; Price Depo. Ex. 1; Consist for NS Train Y47-L2-26).

RESPONSE:  Admitted.

20.    The Norfolk Southern train consisted of three engines and 153 loaded coal cars, weighed 19,376 tons, and was 7,818 feet in length. (Affidavit of Nelson, ¶ 3 and Ex. A; Consist for NS Train Y47-L2-26).

RESPONSE:  Admitted.

21.    The train crew for NS Train Y47-L2-26 consisted of Timothy J. Price (hereinafter "Price), Locomotive Engineer, and Robert B. Glenn (hereinafter "Glenn"), Conductor, both of whom were located in the lead locomotive of the train. (Glenn Depo., p. 28; Price Depo., p. 16, 18; Glenn Depo. Ex. 3; Price Depo. Ex. 1; Answer to Interrogatory No. 5 of Plaintiff's First Set of Interrogatories to Defendant).

RESPONSE:  Admitted.

22.     Shortly before the April 27, 1997 accident, plaintiff Nixon and Houston were on the north side of the eastbound Norfolk Southern train, riding their bicycles against traffic in an easterly direction in the westbound lane of West 19th Street.  (R. Nixon Depo., p. 18, 24-28, 44, 51).

RESPONSE:  Admitted.


23.     At a location somewhere west of Myrtle Street -- about a block and a half from Sassafras Street -- plaintiff Nixon used his right hand to grab onto a handle that was located on the side of, and to the rear of, one of the passing rail cars; had his left hand on the left handlebar; and was being pulled along by the eastbound train while riding his bicycle.  (R. Nixon Depo., p. 29-35, 44; Affidavit of A. Baxter, ¶ 6; Affidavit of G. Baxter, ¶ 6).

RESPONSE:  Admitted.


24.     The rail car that plaintiff Nixon grabbed onto was toward the rear of the Norfolk Southern train.  (Affidavit of A. Baxter, ¶ 3, 8-9; Affidavit of G. Baxter, ¶ 3, 8-9).

RESPONSE:  Admitted.


25.     Neither Price nor Glenn, who were located in the lead locomotive of the train, saw plaintiff Nixon or Houston riding their bicycles prior to the April 27, 1997 accident.  (Glenn Depo., p. 26; Price Depo., p. 11; Answer to Interrogatory No. 8 of Plaintiff's First Set of Interrogatories to Defendant).

RESPONSE:  Admitted.

26.     Plaintiff Nixon does not recall seeing the locomotives at the front of the Norfolk Southern train.  (R. Nixon Depo., p. 36-37).

RESPONSE:   Admitted.


27.     While plaintiff Nixon was still holding onto the moving train with his right hand, his bicycle began to wobble, and he fell off his bicycle in the vicinity of the intersection of West 19th Street and Sassafras Street.  (R. Nixon Depo., p. 45; Affidavit of A. Baxter, ¶ 6-7; G. Baxter Affidavit, ¶ 6-7).

RESPONSE:   Admitted.


28.     Plaintiff Nixon does not know why he fell off his bicycle -- he only recalls holding onto the handle near the rear of one of the rail cars and then going down.  (R. Nixon Depo., p. 49, 54).

RESPONSE:   Admitted.


29.     After plaintiff Nixon fell, the moving train severed his left foot. (R. Nixon Depo., p. 49).

RESPONSE:   Admitted.


30.     Neither Price nor Glenn was aware that the April 27, 1997 accident had occurred until they received a radio call from the Norfolk Southern dispatcher, when they were a "pretty fair distance" from the accident site, who informed them about the accident and directed them to

stop the train.   (Glenn Depo., p. 49; Glenn Depo. Ex. 3; Price Depo. Ex. 1; Affidavit of A. Baxter, ¶ 9; Affidavit of G. Baxter, ¶ 8-9).

       <u>RESPONSE</u>:   Admitted.


       31.     The Norfolk Southern train passed completely through the Sassafras Street intersection before it came to a stop.  (Affidavit of A. Baxter, ¶ 8; Affidavit of G. Baxter, ¶ 8).

       <u>RESPONSE</u>:   Admitted.


       32.     Following the April 27, 1997 accident, Norfolk Southern inspected Unit 8669 -- the lead engine of NS Train Y47-L2-26 -- and there were no defects noted.   (Statement of Equipment Inspection, NS Unit 8669 dated 4/27/97).

       <u>RESPONSE</u>:   Admitted.


       33.     The train consist of NS Train Y47-L2-26 shows that the Norfolk Southern train involved in the April 27, 1997 accident was made up of 13 different types of coal cars. (Affidavit of Nelson, ¶ 3 and Ex. A; Consist of NS Train Y47-L2-26).

       <u>RESPONSE</u>:   Admitted.


       34.     The 13 types of coal cars that made up the Norfolk Southern train ranged from 9 feet, 7-1/8 inches to 9 feet, 7-7/8 inches in width between the outer edges of the sill steps of the cars without considering the additional width of the ladders or hand holds that extend out from the sides of the cars.  (Affidavit of Nelson, ¶ 4 and Ex. B).

       <u>RESPONSE</u>:   Admitted.

35.    The width of the cars on NS Train Y47-L2-26 exceeded the width of the Norfolk Southern limited right of way through West 19th Street which was 8 feet, 6 inches from end of tie to end of tie.  (Baskin Depo., p. 9-10; Morgan Depo., p. 26, Pandlis Depo., p. 17, 22-23; Affidavit of Nelson, ¶ 4).

    RESPONSE:   Admitted.


36.    When plaintiff Nixon was holding onto the eastbound Norfolk Southern train before he fell, he was riding his bicycle on the public street owned and maintained by the City of Erie  and not on the Norfolk Southern limited right of way.  (Baskin Depo., p. 9-10; Frye Depo., p. 37-43; Morgan Depo., p. 26, Pandlis Depo., p. 17, 22-23, 37; Affidavit of Nelson, ¶ 3 and Ex. A-B).

    RESPONSE:   Admitted.


37.    During the period from 1977 to June of 1997, David C. Morgan served as a Trainmaster for Norfolk Southern based in Conneaut, Ohio and was responsible for supervising train crews operating over the stretch of track that included the West 19th Street tracks.  (Morgan Depo., p. 7, 10, 12-13).

    RESPONSE:   Admitted.


38.    The April 27, 1997 accident involving plaintiff Nixon was the only accident of its type that occurred along the West 19th Street tracks during the 20-year period from 1977 to June of 1997, while Morgan was Trainmaster.  (Morgan Depo., p. 42).

    RESPONSE:   Admitted.

39.    Defendant Norfolk Southern Railway Company conducted a search of its records covering the period from January 1, 1992 to April 27, 1997, and could not locate any records of any "problems" with children grabbing onto rail cars of moving trains while riding bicycles on West 19th Street between State Street and Cherry Street; any records of children who were injured as a result of grabbing onto rail cars of moving trains while riding bicycles along West 19th Street between State Street and Cherry Street; or any records of complaints from any person or agency about children grabbing onto rail cars of moving trains while riding bicycles along West 19th Street between State Street and Cherry Street.  (Answer to Interrogatory Nos. 9, 15-16 of Plaintiff's First Set of Interrogatories to Defendants).

RESPONSE:   Admitted.  In further response, the reason that Defendant, Norfolk Southern Company could not locate any records about "problems" with children grabbing onto rail cars of moving trains while riding their bicycles on West 19th Street between State and Cherry Streets was because company employees who were aware that children were grabbing onto moving trains while riding on West 19th Street did not notify the company of this fact.  (R. Rockey Depo., p. 19).


II.    **Plaintiff's Counter-Concise Statement of Material Facts and Defendants' Responses**


40.    The Norfolk Southern Railroad tracks covered approximately 1.2 miles on West 19th Street between Peach Street and Cranberry Street.  (J. Guarino Depo., Exhibit "3").

RESPONSE:  Denied.   The statement in Paragraph 40 is not supported by admissible record evidence.

The testimony and evidence of James A. Guarino (hereinafter "Guarino"), one of the proffered experts of plaintiff Robin Nixon (hereinafter "Nixon"), should be excluded under Rule 702 of the Federal Rules of Evidence for the reasons set forth in Defendants' Motion to Bar James A. Guarino as Expert Witness and to Exclude Guarino's Testimony and Other Evidence in Opposition to Defendants' Motion for Summary Judgment (hereinafter "Defendants' Motion to Bar Guarino as Expert Witness") and its supporting brief and other materials that will be separately filed.

Furthermore, the length of the Norfolk Southern Railway Company tracks on West 19th Street between Peach Street and Cranberry Street is irrelevant and immaterial for the reasons set forth in the Motion for Summary Judgment on Behalf of Defendants Norfolk Southern Railway Company (hereinafter "Norfolk Southern Motion for Summary Judgment") and its supporting briefs and other materials.

41.    There are 76 residences and 30 industrial/commercial businesses between Peach Street and Raspberry Street adjacent to Norfolk Southern's West 19th Street tracks.  In addition, eight schools are located within 1,200 feet of the line.  (A. Westphal Depo., Exhibit "7").

RESPONSE:  Denied.  The statement in Paragraph 41 is not supported by admissible record evidence.

The testimony and evidence of August W. Westphal (hereinafter "Westphal"), one of Nixon's proffered experts, should be excluded under Rule 702 of the Federal Rules of Evidence for the reasons set forth in Defendants' Motion to Bar August W. Westphal as Expert Witness and to Exclude Westphal's Testimony and Other Evidence in Opposition to Defendants'

Motion for Summary Judgment (hereinafter "Defendants' Motion to Bar Westphal as Expert Witness") and its supporting brief and other materials that will be separately filed.

Furthermore, the statement set forth in Paragraph 41 is taken from a supplemental expert report of Westphal that quotes an undated Draft Environmental Impact Statement that addressed an anticipated increase in Norfolk Southern train traffic through the City of Erie if Consolidated Rail Corporation were acquired by Norfolk Southern an acquisition which had not occurred as of April 27, 1997; the location of the "eight area schools" in the draft report is unclear, given the reference to the Norfolk Southern "main line" which runs through the entire City of Erie, not only through West 19th Street; and under the Pennsylvania Public Utility Commission Order Nisi dated June 16, 1982, that was in effect as of April 27, 1997, Norfolk Southern Railway Company was required only to have crossing guards at three specific grade crossings -- Cranberry, Cascade and Cherry Streets -- and only during school hours on school days during the school year. (Stone Depo., p. 17-18, 27-28, 37-38; Stone Depo. Ex. 5). Finally, the number of residences, industrial/commercial businesses and schools is irrelevant and immaterial for the reasons set forth in the Norfolk Southern Motion for Summary Judgment and its supporting briefs and other materials.

42.    There were signs adjacent to Norfolk Southern's tracks which identified the tracks as belonging to Norfolk Southern. (R. Rockey Depo., p. 13).

RESPONSE: Denied.  The statement in Paragraph 42 is not supported by admissible record evidence.

Robert E. Rockey (hereinafter "Rockey") testified that the signs indicating that the tracks belonged to Norfolk Southern were located at the center of West 19th Street where the tracks were located, not "adjacent" to the tracks.  (Rockey Depo., p. 13).

Furthermore, the statement in Paragraph 42 is irrelevant, immaterial, and inadmissible for the reasons set forth in the Norfolk Southern Motion for Summary Judgment and its supporting briefs and other materials.

43.    The West 19th Street tracks were unique in that they were the only tracks of the railroad which operated on a city street.  (T. Price Depo., p. 19; D. Morgan Depo., p. 31; R. Glenn Depo. p. 50).

<u>RESPONSE</u>:  Denied.   The statement in Paragraph 43 is not supported by admissible record evidence.

Timothy J. Price (hereinafter "Price") testified that he had never operated a train at another location that had similar conditions to those on West 19th Street between State and Cranberry Streets.  (Price Depo., p. 19).  David C. Morgan (hereinafter "Morgan") testified that he had not seen tracks running down the center of a city street at any other location that he had been.  (Morgan Depo., p. 31).  Robert B. Glenn (hereinafter "Glenn") testified that he had never operated a train at another location where the tracks were on the same roadway as the street. (Glenn Depo., p. 50).   Price, Morgan and Glenn were testifying about their own personal knowledge and were not speaking for Norfolk Southern Railway Company as a whole.

Furthermore, the statement in Paragraph 43 is irrelevant, immaterial, and inadmissible for the reasons set forth in the Norfolk Southern Motion for Summary Judgment and its supporting briefs and other materials.

44.    At the time of the accident, Norfolk Southern had a program known as "Operation Lifesaver", where people from the railroad went into schools and local communities to talk about the dangers of trespassing on railroad property. "Operation Lifesaver" was not used in the City of Erie.  (D. Morgan Depo., pp. 45-46).

RESPONSE:  Denied.    The statement in Paragraph 44 is not supported by admissible record evidence.

Morgan testified that Operation Lifesaver, Incorporated is a separate, independent organization to which Norfolk Southern and other railroads contribute; that Operation Lifesaver, Incorporated, rather than Norfolk Southern, produces the written materials that are provided at Operation Lifesaver programs; that Operation Lifesaver has a coordinator in Ohio who trains "volunteers" from the railroads to make presentations; that he never has been to any Operation Lifesaver program that addressed, "kids on bicycles where there's a paved roadway that's adjacent to the tracks"; and that he did not know any specifics about Operation Lifesaver programs "for this particular area and this particular condition."   (Morgan Depo., p. 45-48). Morgan did not testify that Operation Lifesaver was a Norfolk Southern program or that Operation Lifesaver was not used in the City of Erie.  (Morgan Depo., p. 45-48).

Furthermore, the statement in Paragraph 44 is irrelevant, immaterial and inadmissible for the reasons set forth in the Norfolk Southern Motion for Summary Judgment and its supporting briefs and other materials.


45.    At the time of the accident, Norfolk Southern had no safety policies concerning situations where motor vehicles or bicycles can travel parallel to tracks located on a public street. (D. Morgan Depo., p. 34).

RESPONSE: Denied. The statement in Paragraph 45 is not supported by admissible record evidence.

Morgan testified that he was not aware of any safety policies or programs that addressed the situation where cars or bicycles are able to travel on a public street, parallel to the tracks at the same time that a train is operating on its right-of-way. (Morgan Depo., p. 33-34). Morgan was testifying about his own personal knowledge and was not speaking for Norfolk Southern Railway Company as a whole. Morgan also testified that the tracks through the middle of West 19th Street did not create a dangerous condition for pedestrians or cars if they obeyed the law and stayed on the public street. (Morgan Depo., p. 43-44).

Furthermore, the statement in Paragraph 45 is irrelevant, immaterial and inadmissible for the reasons set forth in the Norfolk Southern Motion for Summary Judgment and its supporting briefs and other materials.


46. Norfolk Southern did not contact anyone in the City of Erie to express safety concerns about children along the West 19th Street tracks. (D. Morgan Depo., p. 48).

RESPONSE: Denied. The statement in Paragraph 46 is not supported by admissible record evidence.

Morgan testified that he had never contacted the City of Erie Police Department to address, "any concerns there might be with safety and children along the 19th Street tracks." (Morgan Depo., p. 48). Morgan also testified that he did not recall ever seeing children playing in the street alongside the tracks; that during his 20 years as Trainmaster, he was not aware of any child, other than Nixon, who was injured as a result of grabbing onto a moving train; and that Nixon's accident was the first of its type that had occurred. (Morgan Depo., p. 7, 19-20,

40-42).  Morgan did not testify that Norfolk Southern did not contact anyone in the City of Erie, "to express safety concerns about children along the West 19th Street tracks."

Furthermore, the statement in Paragraph 46 is irrelevant, immaterial and inadmissible for the reasons set forth in the Norfolk Southern Motion for Summary Judgment and its supporting briefs and other materials.

47.     Robert Rockey, a Norfolk Southern employee who acted as a watchman along the West 19th Street tracks during the school year, observed children playing adjacent to the West 19th Street tracks.  (R. Rockey Depo., pp. 11-12).

RESPONSE:  Denied.   The statement in Paragraph 47 is not supported by admissible record evidence.

Rockey testified that during the period from April of 1970 to 1983, when he worked as a watchman in the crossing towers that existed during that period of time, he occasionally observed children playing on West 19th Street, but did not see them doing so on a regular basis.  (Rockey Depo., p. 5-6, 11-12).

Furthermore, the statement in Paragraph 47 is irrelevant, immaterial and inadmissible for the reasons set forth in the Norfolk Southern Motion for Summary Judgment and its supporting briefs and other materials.

48.     David C. Morgan, Trainmaster for the area including the West 19th Street tracks, visited the area on a number of occasions.  He did not speak with anyone in the area, Norfolk Southern watchman, or residents to determine if children on their bicycles were grabbing onto moving trains.  (C.D. Morgan Depo., pp. 28-29).

RESPONSE: Denied. The statement in Paragraph 48 is not supported by admissible record evidence.

Morgan testified that he never heard of a child or a person grabbing onto a railcar to be towed along in the same manner that Nixon did; that he never observed any such activity; and that he never discussed any concerns about the safety of children in the areas on West 19th Street adjacent to the tracks. (Morgan Depo., p. 28-29). Morgan also testified that he did not recall ever seeing children playing in the street alongside the tracks and that during his 20 years as Trainmaster, he was not aware of any child, other than Nixon, who was injured as a result of grabbing onto a moving train; and that Nixon's accident was the first of its type that had occurred. (Morgan Depo., p. 7, 19-20, 40-42). Morgan did not testify that he did not speak with anyone in the area -- Norfolk Southern watchmen or residents -- to determine if children on bicycles were grabbing onto moving trains.

Furthermore, the statement in Paragraph 48 is irrelevant, immaterial and inadmissible for the reasons set forth in the Norfolk Southern Motion for Summary Judgment and its supporting briefs and other materials.


49.    Mr. Rockey saw children on bicycles grab onto trains traveling along the West 19th Street tracks. He did not report this fact to his supervisors or anyone else connected with the railroad. (R. Rockey Depo., p. 19).

RESPONSE: Denied.  The statement in Paragraph 49 is not supported by admissible record evidence.

Rockey testified that during the 17-year period from 1970 to 1987, when he worked in the crossing towers and later as an on-ground crossing watchman at certain locations

along West 19th Street, there were only one or two occasions that he saw a kid on a bicycle grab onto a moving train to be towed along.  (Rockey Depo., p. 5-7, 18-19).  Rockey also testified that he did not report those two incidents to his supervisors because he did not have the name of either kid to report.  (Rockey Depo., p. 19).

Furthermore, the statement in Paragraph 49 is irrelevant, immaterial and inadmissible for the reasons set forth in the Norfolk Southern Motion for Summary Judgment and its supporting briefs and other materials.


50.    Children could have been deterred from grabbing onto moving trains while riding their bicycles along West 19th Street through the use of rumble strips adjacent to the tracks. (A. Westphal Depo., p. 99; and A. Westphal Depo., Exhibit "6").

RESPONSE:  Denied.  The statement in Paragraph 50 is not supported by admissible record evidence.

The testimony and evidence of Westphal, one of Nixon's proffered experts, should be excluded under Rule 702 of the Federal Rules of Evidence for the reasons set forth in Defendants' Motion to Bar Westphal as Expert Witness and its supporting brief and other materials that will be separately filed.  Westphal's testimony, moreover, did not establish that Nixon would have been deterred by, "the use of rumble strips" from grabbing onto the Norfolk Southern train while riding his bicycle on West 19th Street on April 27, 1997.

Furthermore, the statement in Paragraph 50 is irrelevant, immaterial and inadmissible for the reasons set forth in the Norfolk Southern Motion for Summary Judgment and its supporting briefs and other materials.

51.    Children could have been deterred from grabbing onto moving trains while riding their bicycles along West 19th Street through the use of signs painted between the tracks stating "Danger – No Bikes".  (A. Westphal Depo., p 99 and A. Westphal Depo., Exhibit "6").

RESPONSE:  Denied.    The statement in Paragraph 51 is not supported by admissible record evidence.

The testimony and evidence of Westphal, one of Nixon's proffered experts, should be excluded under Rule 702 of the Federal Rules of Evidence for the reasons set forth in Defendants' Motion to Bar Westphal as Expert Witness and its supporting brief and other materials that will be separately filed.  Westphal's testimony, moreover, did not establish that Nixon would have been deterred by, "signs painted between the tracks stating, 'Danger - No Bikes'" from grabbing onto the Norfolk Southern train while riding his bicycle on West 19th Street on April 27, 1997.

Furthermore, the statement in Paragraph 51 is irrelevant, immaterial and inadmissible for the reasons set forth in the Norfolk Southern Motion for Summary Judgment and its supporting briefs and other materials.


52.    Children could have been deterred from grabbing onto moving trains while riding their bicycles along the West 19th Street tracks through the use of warning signs adjacent to the tracks.  (A. Westphal Depo., pp. 108, 109, and A. Westphal Depo., Exhibit "6").

RESPONSE:  Denied.    The statement in Paragraph 52 is not supported by admissible record evidence.

The testimony and evidence of Westphal, one of Nixon's proffered experts, should be excluded under Rule 702 of the Federal Rules of Evidence for the reasons set forth in

Defendants' Motion to Bar Westphal as Expert Witness and its supporting brief and other materials that will be separately filed. Westphal's testimony, moreover, did not establish that Nixon would have been deterred by, "warning signs adjacent to the tracks" from grabbing onto the Norfolk Southern train while riding his bicycle on West 19th Street on April 27, 1997.

Furthermore, the statement in Paragraph 52 is irrelevant, immaterial and inadmissible for the reasons set forth in the Norfolk Southern Motion for Summary Judgment and its supporting briefs and other materials.

53.    Norfolk Southern did not contact the City of Erie to request permission to place warning signs adjacent to the West 19th Street tracks. (A. Westphal Depo., p. 110).

RESPONSE: Denied. The statement in Paragraph 53 is not supported by admissible record evidence.

The testimony and evidence of Westphal, one of Nixon's proffered experts, should be excluded under Rule 702 of the Federal Rules of Evidence for the reasons set forth in Defendants' Motion to Bar Westphal as Expert Witness and its supporting brief and other materials that will be separately filed.

Furthermore, the statement in Paragraph 53 is irrelevant, immaterial and inadmissible for the reasons set forth in the Norfolk Southern Motion for Summary Judgment and its supporting briefs and other materials.

54.    Norfolk Southern did not contact the City of Erie to discuss the means of protecting children riding their bicycles adjacent to the West 19th Street tracks. (A. Westphal Depo., p. 147).

RESPONSE: Denied. The statement in Paragraph 54 is not supported by admissible record evidence.

The testimony and evidence of Westphal, one of Nixon's proffered experts, should be excluded under Rule 702 of the Federal Rules of Evidence for the reasons set forth in Defendants' Motion to Bar Westphal as Expert Witness and its supporting brief and other materials that will be separately filed.

Furthermore, the statement in Paragraph 54 is irrelevant, immaterial and inadmissible for the reasons set forth in the Norfolk Southern Motion for Summary Judgment and its supporting briefs and other materials.

55.    The cost of installing rumble strips adjacent to the West 19th Street tracks would have been approximately Four Thousand Nine Hundred Seventy ($4,970.00) Dollars. (Guarino Depo., Exhibit "3").

RESPONSE: Denied. The statement in Paragraph 55 is not supported by admissible record evidence.

The testimony and evidence of Guarino, one of Nixon's proffered experts, should be excluded under Rule 702 of the Federal Rules of Evidence for the reasons set forth in Defendants' Motion to Bar Guarino as Expert Witness and its supporting brief and other materials that will be separately filed.

Furthermore, the statement in Paragraph 55 is irrelevant, immaterial and inadmissible for the reasons set forth in the Norfolk Southern Motion for Summary Judgment and its supporting briefs and other materials.

56.     The cost of installing and maintaining the rumble strips and striping would have been approximately Three Thousand Five Hundred ($3,500.00) Dollars per year.  (Guarino Depo., Exhibit "3").

RESPONSE:  Denied.   The statement in Paragraph 56 is not supported by admissible record evidence.

The testimony and evidence of Guarino, one of Nixon's proffered experts, should be excluded under Rule 702 of the Federal Rules of Evidence for the reasons set forth in Defendants' Motion to Bar Guarino as Expert Witness and its supporting brief and other materials that will be separately filed.

Furthermore, the statement in Paragraph 56 is irrelevant, immaterial and inadmissible for the reasons set forth in the Norfolk Southern Motion for Summary Judgment and its supporting briefs and other materials.

57.     The cost of painting signs and stripes on and adjacent to the West 19th Street tracks warning people of the danger of riding bikes on or near the tracks would have been approximately Two Thousand Nine Hundred Fifty and 80/100 ($2,950.80) Dollars.  (Guarino Depo., Exhibit "3").

RESPONSE:  Denied.   The statement in Paragraph 57 is not supported by admissible record evidence.

The testimony and evidence of Guarino, one of Nixon's proffered experts, should be excluded under Rule 702 of the Federal Rules of Evidence for the reasons set forth in Defendants' Motion to Bar Guarino as Expert Witness and its supporting brief and other materials that will be separately filed.

Furthermore, the statement in Paragraph 57 is irrelevant, immaterial and inadmissible for the reasons set forth in the Norfolk Southern Motion for Summary Judgment and its supporting briefs and other materials.

58.    Robin Nixon's friend, Chris Houston, who was also riding his bicycle along the West 19th Street tracks, grabbed onto the moving train before Robin grabbed onto the train.  (R. Nixon Depo., p. 35).

RESPONSE:  Denied.   The statement in Paragraph 58 is not supported by admissible record evidence.

Whether Chris Houston grabbed onto the Norfolk Southern train "right before" Nixon is irrelevant, immaterial and inadmissible for the reasons set forth in the Norfolk Southern Motion for Summary Judgment and its supporting briefs and other materials.  (R. Nixon Depo., p. 35).

59.    Prior to the date of the accident, no one had ever warned Robin Nixon about staying away from moving trains.  He did not realize the danger of riding alongside a moving train.  (R. Nixon Depo., pp. 37-3 8).

RESPONSE:  Denied.   The statement in Paragraph 59 is not supported by admissible record evidence.

On three separate occasions during 1997 including the day of the April 27, 1997 accident, Nixon's father -- Ervin Nixon, Sr. -- told Nixon that Nixon was not allowed to go north of West 21st Street toward West 19th Street and that he should stay away from the West 19th Street railroad tracks.  (E. Nixon Depo., p. 17-22).  On the first of those three occasions, Nixon's

father showed Nixon the railroad tracks on West 19th Street and directed him to stay away from the tracks.  (E. Nixon Depo., p. 20-21).  On the second and third occasions, Nixon's father gave Nixon the same instructions about staying away from the tracks.  (E. Nixon Depo., p. 21-22). Nixon affirmatively acknowledged these instructions.  (E. Nixon Depo., p. 22).

Furthermore, the statement in Paragraph 59 is irrelevant, immaterial and inadmissible for the reasons set forth in the Norfolk Southern Motion for Summary Judgment and its supporting briefs and other materials.


60.    All children do not necessarily understand the danger of moving trains.  (D. Morgan Depo., p. 44).

RESPONSE:  Denied.  The statement in Paragraph 60 is not supported by admissible record evidence.

Morgan did not testify that, "[a]ll children do not necessarily understand the danger of moving trains."  (Morgan Depo., p. 44).

Furthermore, the statement in Paragraph 60 is irrelevant, immaterial and inadmissible for the reasons set forth in the Norfolk Southern Motion for Summary Judgment and its supporting briefs and other materials.

Respectfully submitted,

SEGEL & SOLYMOSI


By    s/ Tibor R. Solymosi
        Tibor R. Solymosi, Esquire
        818 State Street
        Erie, Pennsylvania 16501
        (814) 454-1500

        Attorneys for Plaintiff
          Robin Nixon



        s/ Roger H. Taft
Roger H. Taft
PA 19983/NY 2876456
MacDONALD, ILLIG, JONES & BRITTON LLP
100 State Street, Suite 700
Erie, Pennsylvania 16507-1459
(814) 870-7603
(814) 454-4647 (facsimile)
rtaft@mijb.com

Attorneys for Defendants
    Norfolk Southern Corporation and Norfolk
    Southern Railway Company, Inc.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 15, 2007, the foregoing Joint Concise Statement of Material Facts was filed electronically with the Clerk of Court using the Electronic Case Filing system. Notice of this filing will be sent to all parties by operation of the Court's ECF system and constitutes service of this filing under Rule 5(b)(2)(D) of the Federal Rules of Civil Procedure. Parties may access this filing through the Court's ECF system.



s/ Roger H. Taft
Roger H. Taft, Esq.