IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **ROBIN NIXON,** )<br>)<br>**Plaintiff,** )<br>)<br>v. )<br>)<br>**NORFOLK SOUTHERN** )<br>**CORPORATION and NORFOLK** )<br>**SOUTHERN RAILWAY** )<br>**COMPANY, INC.,** )<br>)<br>**Defendants.** ) | Civil No. 05-101 Erie |

## Opinion

When Plaintiff Robin Nixon was twelve years old he suffered serious and permanent injuries from falling under a train while riding his bicycle. The accident occurred when Plaintiff grabbed onto a passing railway car, lost control of his bicycle, and fell under the train. Plaintiff sues Defendants Norfolk Southern Corporation and Norfolk Southern Railway Company, Inc., claiming that the injuries he suffered were due to Defendants' negligence.

On January 29, 2004, Plaintiff filed a Praecipe for Writ of Summons in the Court of Common Pleas of Erie County, Pennsylvania. On January 10, 2005, Defendant filed a Praecipe for Rule to File Complaint, after which Plaintiff filed a Complaint against Defendants on March 2, 2005. On April 1, 2005, Defendants removed the action to federal court on the basis of diversity of citizenship pursuant to 28 U.S.C. § 1332. An initial case management conference was

held on June 20, 2005, setting the close of discovery for October 21, 2005. The parties jointly moved to extend discovery deadlines several times ultimately resulting in fact discovery closing on January 19, 2007, and expert discovery closing on May 25, 2007.

Presently before the court is Defendants' Motion for Summary Judgment with Brief in Support thereof filed on June 25, 2007. Plaintiff has filed a Brief in Opposition to the motion for summary judgment, to which Defendants have filed a Reply Brief. In addition, Defendants have also submitted motions in limine to bar Plaintiff's expert witnesses and their testimony. Finally, the parties' Joint Concise Statement of Material Facts was filed on August 15, 2007. For the reasons that follow we will grant Defendants' motion for summary judgment and dismiss this action.

## I. BACKGROUND

Plaintiff Robin Nixon resides at 3603 Peach Street, Erie, Pennsylvania. (Joint Concise Statement of Material Facts (hereinafter "JCSMF"), at ¶ 1.) He was born on December 3, 1984. (JCSMF, at ¶ 1.) Defendants are Norfolk Southern Corporation and Norfolk Southern Railway Company, Inc., more properly known as "Norfolk Southern Railway Company." (JCSMF, at ¶¶ 2-3.) Norfolk Southern Corporation is the parent corporation of Norfolk Southern Railway Company. (JCSMF, at ¶ 4.)

At the time of the accident at issue in this case, Plaintiff was twelve years old and was in the 6th grade at Glenwood Elementary School. (JCSMF, at ¶ 14.) The accident occurred on Sunday, April 27, 1997, at approximately 12:24 p.m., in the vicinity of the intersection of West 19th Street and Sassafras Street in the City of Erie, Pennsylvania. (JCSMF, at ¶ 13.)

On the date of the accident, West 19th Street in the City of Erie, was a public street with an asphalt surface that ran in a generally east-west direction with a sidewalk along the street. (JCSMF,

2

at ¶ 6, 7.) The City of Erie owned and maintained West 19th Street. (JCSMF, at ¶ 11.)

Norfolk Southern owned and maintained a limited right of way through the middle of West 19th Street, upon which Norfolk Southern owned and maintained a single set of railroad tracks running in a generally east-west direction. (JCSMF, at ¶¶ 6, 8, 10.) Norfolk Southern's limited right of way was eight feet, six inches in width, extending from the ends of the ties to the ends of the ties. (JCSMF, at ¶ 8.)

The westbound lane of West 19th Street was to the north of the railroad tracks, while the eastbound lane of West 19th Street was to the south of the railroad tracks. (JCSMF, at ¶ 6.) Both the eastbound and westbound lanes were open for vehicular and other traffic. (JCSMF, at ¶¶ 6, 9.) Vehicles were able to travel along West 19th Street in both directions at the same time as a train traveled along the railroad tracks. (JCSMF, at ¶ 9.) The speed limit for trains on the railroad tracks traveling on the limited right of way through West 19th Street, at and approaching the intersection with Sassafras Street, was 15 miles per hour. (JCSMF, at ¶ 12.)

On April 27, 1997, Plaintiff's father, Ervin Nixon, Sr., gave his son Robin permission to ride his bicycle to visit his friend, Christopher Houston, who lived on West 21st Street between Sassafras and Peach Streets. (JCSMF, at ¶ 15.) Mr. Nixon also told his son Robin that he was not allowed to go north of West 21st Street toward West 19th Street because of concerns about traffic and the Norfolk Southern railroad tracks. (JCSMF, at ¶ 16.) Robin Nixon affirmatively acknowledged his father's order. (JCSMF, at ¶ 16.)

Mr. Nixon had previously given his son permission to visit Christopher Houston's house on West 21st Street on two separate occasions in 1997. (JCSMF, at ¶ 17.) On both of these occasions Mr. Nixon told his son that he was not permitted to go north of West 21st Street. (JCSMF, at ¶ 17.)

Mr. Nixon accompanied Plaintiff to his friend's house on both of the prior visits in 1997, and showed Plaintiff where the Norfolk Southern tracks were located on at least one of the occasions. (JCSMF, at ¶ 18.) Both times Mr. Nixon told Plaintiff to stay away from the tracks. (JCSMF, at ¶ 18.) Mr. Nixon was concerned about his son crossing the West 19th Street railroad tracks. (JCSMF, at ¶ 18.) Mr. Nixon did not specifically warn his son about the dangers of riding his bicycle near the railroad tracks, the dangers of riding his bicycle near a moving train, or the dangers of grabbing onto a handrail on a moving train while riding his bicycle. (JCSMF, at ¶ 18.)

A Norfolk Southern owned and operated train identified as NS Train Y47-L2-26 was traveling in an eastbound direction over the Norfolk Southern right of way at or within the track speed limit. (JCSMF, at ¶ 19.) The Norfolk Southern Train consisted of three engines and 153 loaded coal cars, weighed 19,376 tons, and was 7,818 feet in length. (JCSMF, at ¶ 20.) The crew of the train consisted of Locomotive Engineer Timothy J. Price and Conductor Robert B. Glenn, both of whom were located in the lead locomotive of the train. (JCSMF, at ¶ 21.)

Shortly before the accident occurred Plaintiff and Christopher Nixon were riding their bicycles against traffic in the westbound lane of West 19th Street; that is, they were traveling in an easterly direction. (JCSMF, at ¶ 22.) The westbound lane of West 19th Street is located north of the limited right of way and train tracks. (JCSMF, at ¶ 22.) The Norfolk Southern train was also traveling eastbound. (JCSMF, at ¶ 22.)

About a block and a half before the intersection of West 19th Street and Sassafras Street Plaintiff used his right hand to grab onto a handle that was located on the side of, and to the rear of, one of the passing rail cars toward the rear of the train. (JCSMF, at ¶ 23, 24.) With his left hand on his bicycle handlebar and his right hand holding onto the handle of the rail car, Plaintiff was pulled

along West 19th Street by the train. (JCSMF, at ¶ 23.) While Plaintiff was still holding onto the moving train with his right hand, his bicycle began to wobble, and he fell off his bicycle in the vicinity of the intersection of West 19th Street and Sassafras Street. (JCSMF, at ¶ 27.) After he fell, the passing train severed his left foot. (JCSMF, at ¶ 29.) Before he fell, Plaintiff was riding on the public street owned and maintained by the City of Erie; he was not riding on the Norfolk Southern limited right of way. (JCSMF, at ¶ 36.) Plaintiff does not know why he fell off his bicycle, he only recalls that he was holding onto a handle near the rear of the rail cars and then he fell off his bicycle. (JCSMF, at ¶ 28.)

Neither Locomotive Engineer Price nor Conductor Glenn knew that Plaintiff and Christopher Houston were riding their bicycles. (JCSMF, at ¶ 25.) In addition, Plaintiff does not recall seeing the locomotives at the front of the Norfolk Southern train on April 27, 1997. (JCSMF, at ¶ 26.) Mr. Price and Mr. Glenn were not aware of the accident until they received a radio call from the Norfolk Southern dispatcher who informed them of the accident and directed them to stop the train. (JCSMF, at ¶ 30.) The train had completely passed through the intersection at Sassafras Street by the time it came to a stop. (JCSMF, at ¶ 31.)

After the accident, Norfolk Southern's inspection of the lead engine of NS Train Y47-L2-26 revealed no defects. (JCSMF, at ¶ 32.) There were 13 different types of coal cars in the train, ranging in width from 9 feet, 7-1/8 inch to 9 feet, 7-7/8 inch. (JCSMF, at ¶ 34.) The width of the coal cars does not account for additional width that would be added by including the ladders and handholds that extend out from the sides of the coal cars. (JCSMF, at ¶ 34.) Measuring the width of the cars on the train shows that the cars are wider than the 8 foot, 6 inch limited right of way. (JCSMF, at ¶ 35.)

The April 27, 1997 accident involving Plaintiff was the only accident of its type that occurred along the West 19th Street tracks during the 20-year period from 1977 to June 1997. (JCSMF, at ¶ 38.) Norfolk Southern Railway Company conducted a search of its records for the period January 1, 1992 through April 27, 1997. (JCSMF, at ¶ 39.) This search did not reveal (i) any "problems" with children grabbing onto rail cars of moving trains while riding bicycles on West 19th Street between State Street and Cherry Street; (ii) any records of children who were injured as a result of grabbing onto rail cars of moving trains while riding bicycles along West 19th Street between State Street and Cherry Street; or (iii) any records of complaints from any person or agency about children grabbing onto rail cars of moving trains while riding bicycles along West 19th Street between State Street and Cherry Street . (JCSMF, at ¶ 39.) However, at least one of Defendants' employees stated that once or twice in the period from April 1970 to 1987, he saw children grab onto a moving train while riding on West 19th Street, but he never reported this to his supervisors. (JCSMF, at ¶ 39, 49.)

## II.. STANDARD OF REVIEW

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P.56(c), Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). Summary judgment may be granted only if the moving party establishes that there exists no genuine issue of material fact and that it is entitled to judgment as a matter of law. Id. Summary judgment is appropriate only when the record evidence could not lead a reasonable jury to find for the non-moving party. Anderson v. Liberty Lobby Inc., 477 U.S. 242, 248-249 (1986). In evaluating a

6

motion for summary judgment the court does not weigh the evidence or make credibility determinations. Reeves v. Sanderson Plumbing Products, Inc., 120 S.Ct. 2097, 2110 (2000). Rather than evaluating the evidence and determining the truth of the matter, the court determines whether there is a genuine issue for trial. Anderson, 477 U.S. at 249. In reviewing the evidence, the court draws all reasonable inferences in favor of the non-moving party. Reeves, 120 S.Ct. at 1210; Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986).

### III.  DISCUSSION

In response to Defendants' motion for summary judgment, Plaintiff concedes that Defendants cannot be held liable based on the design of the handholds on the railcars, and that there is no liability on the part of Norfolk Southern Corporation as the parent company of Norfolk Southern Railway Company. Plaintiff contends that Norfolk Southern is liable in this case based on section 339 of the Restatement (Second) of Torts, entitled **Artificial Conditions Highly Dangerous to Trespassing Children**. Therefore, the only issue before the Court is Defendants' contention that summary judgment as a matter of law is warranted in this case because Plaintiff cannot set forth a claim of negligence under section 339.

#### A. Restatement (Second) of Torts § 339

The Pennsylvania Supreme Court has adopted Section 339 of the Restatement (Second) of Torts, which superceded and supplemented what was previously known as the "attractive nuisance" doctrine. *Jesko v. Turk*, 219 A.2d 591, 592 (Pa. 1966); *Dugan v. Pennsylvania Railroad Company*, 127 A.2d 343, 346 (Pa. 1956); *Bartleson v. Glen Alden Coal Co.*, 64 A.2d 846 (Pa. 1949). Section 339 provides as follows:

7

**§ 339 Artificial Conditions Highly Dangerous to Trespassing Children**
A Possessor of land is subject to liability for physical harm to children trespassing thereon caused by an artificial condition upon the land if

 (a) the place where the condition exists is one upon which the possessor knows or has reason to know that children are likely to trespass, and

 (b) the condition is one of which the possessor knows or has reason to know and which he realizes or should realize will involve an unreasonable risk of death or serious bodily harm to such children, and

 (c) the children because of their youth do not discover the condition or realize the risk involved in intermeddling with it or in coming within the area made dangerous by it, and

 (d) the utility to the possessor of maintaining the condition and the burden of eliminating the danger are slight as compared with the risk to children involved, and

 (e) the possessor fails to exercise reasonable care to eliminate the danger or otherwise to protect the children.

Restatement (Second) of Torts § 339.

Defendants first argue that Plaintiff fails to set forth a claim under section 339 because they cannot satisfy the threshold requirement that a moving train is an "artificial condition upon the land." Next, Defendants argue that even if a moving train is considered an "artificial condition upon the land," Plaintiff has not satisfied all five of the requirements of section 339.

**B. "Artificial Condition Upon the Land"**

Defendants' argument that a moving train is not an artificial condition upon the land suffers from "conflat[ing] the inquiry as to whether a train is a natural or an artificial condition upon the land with the analysis to be performed once § 339 is held to apply." *Laster v. Norfolk Southern Railway Company*, __ So.2d __, __, 2007 WL 30073, *4 (Ala. Jan. 5, 2007).

8

Defendants correctly note that "no Pennsylvania appellate court has held that a moving train constitutes an 'artificial condition upon the land' that triggers the application of Restatement (Second) of Torts, § 339." (Defendants' Reply Brief, at 4.) Looking to other jurisdictions, the Defendants support their argument that a moving train should not be considered an artificial condition upon the land because

> "[t]he overwhelming weight of authority in jurisdictions [which have adopted the attractive nuisance doctrine] * * * is that the attractive nuisance exception does not apply as a matter of law in cases where child trespassers are injured by moving trains" because a moving train is not a subtle or hidden danger and its potential for causing serious bodily injury or death to anyone in its path is readily apparent, even to young children. *Holland v. Baltimore & Ohio RR. Co.* (D.C.App.1981), 431 A.2d 597, 602 (*en banc*); *see, also*, Annotation (1971), 35 A.L.R.3d 9; *Alston v. Baltimore & Ohio RR. Co.* (D.D.C.1977), 433 F.Supp. 553; *Gutirrez v. Southern Pacific Co.* (1959), 174 Cal.App.2d 866, 345 P.2d 326; *Seiferth v. St. Louis Southwestern Ry. Co.* (C.A.7, 1966), 368 F.2d 153; *Nolley v. Chicago, M., St. P. & P. RR. Co.* (C.A.8, 1950), 183 F.2d 566; *Smith v. Illinois Cent. RR. Co.* (1952), 214 Miss. 293, 58 So.2d 812.

*McKinney v. Hartz & Restle Realtors, Inc.*, 510 N.E.2d 386, 389 (Ohio 1987). Defendants cite the *Holland* case, which was relied upon by the *McKinney* Court. We find this language to be entirely persuasive:

> An independent analysis of s 339 leads to the conclusion reached by courts in other jurisdictions which have adopted the Restatement formulations that accidents involving moving trains fall outside the scope of s 339 because element (c) of the formulation cannot be satisfied. Element (c) of s 339 requires that "children because of their youth do not discover the condition or realize the risk involved in intermeddling with it or coming within the area made dangerous by it." Appellant's complaint, in alleging that a nine-year-old child on the railroad right-of-way did not realize the danger inherent in coming within an area made dangerous by approaching freight trains, is deficient as a matter of law. In construing element (c) and concluding that s 339 is inapplicable in moving train situations, the California Court of Appeals persuasively reasoned that
>
>> (n)othing could be more pregnant with warning of danger than the noise and appearance of a huge, rumbling string of railroad cars. It

9

> cannot be compared with the silent, deadly danger of high-power electricity, the inanimate attraction of stationary machines, traps or turntables, loose boards, unseen pitfalls, or the still, inviting depths of a swimming pool to a tiny child. (*Herrara v. Southern Pacific Ry. Co.,* supra, 188 Cal.App.2d at 449, 10 Cal.Rptr. at 580.)

*Holland*, 431 A.2d at 602-603. We consider this language significant because the quotation shows that rather than finding that a moving train is not an artificial condition upon the land, the *Holland* Court explicitly stated that it was performing its own "independent analysis of section 339," and specifically stated that section 339 did not apply to moving trains because "element (c)" of section 339 "cannot be satisfied." *Holland*, 431 A.2d at 602.

The cases cited by Defendants support the conclusion that the overwhelming weight of authority is that section 339 does not apply as a matter of law in cases where child trespassers are injured by moving trains, but they do not support a conclusion that a moving train is not an 'artificial condition upon the land' under section 339. We need not decide this issue here, even if we assume that section 339 applies to moving trains; summary judgment is warranted because Plaintiff cannot satisfy subsection 339(c), largely for the reasons stated in the above-cited cases.

### C. Plaintiff's Appreciation of the Danger of a Moving Train

Plaintiff has the burden of establishing all five elements of section 339. Defendants argue that Plaintiff has failed to establish at least three of the five elements. We need only concern ourselves with Defendants' argument that Plaintiff cannot establish section 339(c), since this resolves the matter.

Pursuant to section 339, a possessor of land is subject to liability for physical harm to children trespassing thereon caused by an artificial condition upon the land if, in addition to meeting the four other elements, "the children because of their youth do not discover the condition or realize

10

the risk involved in intermeddling with it or in coming within the area made dangerous by it." Restatement (Second) Torts § 339(c).

In opposing summary judgment on this issue, Plaintiff argues that whether a child appreciates the risk involved in coming into a dangerous area is generally one for the jury. (Plaintiff's Brief in Opposition, at 7, citing Peterson v. Palley Manufacturing Co., 61 A.2d 861 (Pa. 1948). He cites to the Supreme Court of Pennsylvania's statement that

> [g]enerally speaking, [] the care and caution required of a child is measured by his capacity to see and appreciate danger, and he is held only to such measure of discretion as is usual in those of his age and experience; this being necessarily a varying standard, the question is ordinarily one for the jury and not the court.

*Peterson*, 61 A.2d at 865 (citation omitted). The remainder of Plaintiff's argument are assertions to show that a genuine issue of material fact as to this issue does exist.

As stated above, the cases cited by Defendants support the conclusion that the overwhelming weight of authority holds that section 339 does not apply as a matter of law in cases where child trespassers are injured by moving trains "because a moving train is not a subtle or hidden danger and its potential for causing serious bodily injury or death to anyone in its path is readily apparent, even to young children." *McKinney*, 510 N.E.2d at 389. In such a case there is no question for the jury as it is a matter of law that the care and caution expected of children with respect to moving trains is that even young children appreciate such a danger. A review of the relevant Commentary to section 339 supports the conclusion that section 339 is inapplicable to the present case.

Comment i to Section 339, entitled "**When risk such that children can be expected to appreciate it**," explains in part that the duty of the possessor of land "does not extend to those conditions the existence of which is obvious even to children and the risk of which should be fully

11

realized by them." Restatement (Second) of Torts, § 339, Comment i. Comment j to Section 339 states:

> j. There are many dangers, such as those of fire and water, or of falling from a height, which under ordinary conditions may reasonably be expected to be fully understood and appreciated by any child of an age to be allowed at large. To such conditions the rule stated in this Section ordinarily has no application, in the absence of some other factor creating a special risk that the child will not avoid the danger, such as the fact that the condition is so hidden as not to be readily visible, or a distracting influence which makes it likely that the child will not discover or appreciate it.

Restatement (Second) of Torts, § 339, Comment j. Similarly, comment m to section 339 explains that the possessor of land is "not require[d] to keep his land free from conditions which even young children are likely to observe and the full extent of the risk involved in which they are likely to realize." Restatement (Second) of Torts, § 339, Comment m. "The purpose of the duty is to protect children from dangers which they do not appreciate and not to protect them against harm resulting from their own immature recklessness in the case of known and appreciated danger" *Id.*

We agree with the vast majority of jurisdictions that have concluded that accidents involving moving trains fall outside the scope of section 339 because of the failure, as a matter of law, to satisfy subsection (c). We noted earlier, quoting from Holland:

> "(n)othing could be more pregnant with warning of danger than the noise and appearance of a huge, rumbling string of railroad cars. It cannot be compared with the silent, deadly danger of high-power electricity, the inanimate attraction of stationary machines, traps or turntables, loose boards, unseen pitfalls, or the still, inviting depths of a swimming pool to a tiny child."

*Holland*, 431 A.2d at 603 , quoting *Herrara v. Southern Pacific Ry. Co.,* 188 Cal.App.2d 441, 449, 10 Cal.Rptr. 575, 580 (1961). We find that a moving train "under ordinary conditions may reasonably be expected to be fully understood and appreciated by any child of an age to be allowed at large." Comment j to § 339.

12

Plaintiff points to the testimony of David W. Morgan, Trainmaster for Norfolk Southern, to support a general proposition that all children do not necessarily understand the danger of moving trains. (Plaintiff's Brief in Opposition, at 7, citing to David W. Morgan's Deposition Testimony, at 44.) We first note that Mr. Morgan did not testify that "all children do not necessarily understand the danger of moving trains;" his testimony viewed in context is unremarkable. Mr. Morgan testified as a layman, not as a psychologist or other child mental health expert:

> Q. Do you have any children?
> A. Yes, I do.
> Q. Do you think that young children are capable of always observing the rules?
> A. No. Just like adults aren't always capable of observing the rules.
> Q. Do you think that a child is as capable as an adult when it comes to understanding the dangers alongside a railway?
> A. Some children are. My children have been exposed to railroads that they may be more aware of the dangers than other kids, but it is up to the parents to supervise their children. I mean, that's the way it is.
> Q. So do you agree or disagree that that situation [where the accident occurred] was dangerous or not for pedestrians or cars?
> A. No. If everyone obeyed the law, there were no dangers.
> Q. And is that why you didn't undertake any efforts to make sure that children would not be near the train while the train was going by?
> A. That's correct.
> Q. Is it because you assume that if people follow the rules, it wouldn't be dangerous?
> A. Well, you have to assume that people will obey the law, just like I have to assume that a train will stop for a stop signal or a car will stop for a stop signal.

(Deposition Testimony of David W. Morgan, May 23, 2006, at 43-44.) Thus, all Mr. Morgan testified to was that "some children" are "as capable as an adult when it comes to understanding the dangers alongside a railway." In particular, Mr. Morgan was speaking about children of railroad employees, who may know more about the danger of railroads than other children. In addition, Mr.

13

Morgan testified that the railroad along West 19th Street where the accident in this case occurred was not dangerous, so long as the rules in place were observed. None of this testimony is pertinent to whether a moving train is a dangerous condition that may reasonably be expected to be fully understood and appreciated by any child of an age to be allowed at large. Comment j to § 339.

Even if Mr. Morgan had actually testified that "all children do not necessarily understand the danger of moving trains," this evidence by itself adds nothing to Plaintiff's argument. The law already provides that in certain cases either the circumstances or the child-plaintiff may not be "ordinary" so as to fall under the usual rule that a particular danger should be obvious to children. See Comment j to section 339, previously quoted herein. The language of Comment j to section 339 permits a plaintiff to show that his case is not "ordinary," despite facing a danger that would "reasonably be expected to be fully understood and appreciated by any child of an age" to be allowed at large. Here, Plaintiff must show in *his* case that *he* is a child who does not understand the danger of moving trains. He has failed to do so.

Plaintiff relies on his testimony wherein he stated that no one had ever warned him about staying away from moving trains prior to the accident, and that he did not realize the danger of riding alongside a moving train. (Plaintiff's Brief in Opposition, at 7, citing to Plaintiff Robin Nixon's Deposition Testimony, at 37-38.) Plaintiff's deposition testimony is unsupported by any evidence that would show that *this* Plaintiff is not an "ordinary" child who could understand the risk of a moving train. It merely shows that he claims he did not realize the danger of moving trains, and that no one specifically told him to stay away from moving trains. As to the first point, merely claiming to fit within the exception is not the same as producing evidence, such as medical evidence or other evidence, demonstrating that Plaintiff Robin Nixon is not "ordinary" in that he does not or

14

cannot understand the risk of a moving train. Plaintiff has produced no evidence of a diminished mental capacity, of a vision or hearing problem, of a past history of not appreciating certain types of danger, or any other evidence that might support a finding that a genuine issue of material fact exists as to whether this Plaintiff understood the risks of a moving train.

As to Plaintiff's second point, we note that while Plaintiff's father did not specifically tell him to stay away from moving trains, he did testify that he showed his son the railroad tracks and told him not to go across them. (Deposition Testimony of Ervin Lee Nixon, Sr., January 18, 2007, at 20.) As explained above though, a child need not be warned of dangers that are dangers, "which under ordinary conditions may reasonably be expected to be fully understood and appreciated by any child of an age to be allowed at large." Comment j to § 339. Whether Plaintiff was ever warned to stay away from moving trains is immaterial because the risk of a moving train is so obvious that, ordinarily, he is deemed to appreciate the risk as a matter of law.

Plaintiff has also not demonstrated that there is "some other factor creating a special risk that [Plaintiff] will not avoid the danger, such as the fact that the condition is so hidden as not to be readily visible, or a distracting influence which makes it likely that the child will not discover or appreciate it." Comment j to § 339.

In this case, there is no evidence to show that Plaintiff is not an ordinary child who was unable to appreciate the risk of riding his bicycle next to a moving train, or that he was unable to understand the risk of grabbing on to a handle of the train while riding his bicycle. *Id.* In addition, there is no "other factor creating a special risk that the child will not avoid the danger" of the moving train. Comment j to § 339. Thus, "as a matter of law, element (c) of the rule is not met since a moving train is a danger so obvious that any [twelve]-year-old child allowed at large would

15

readily discover it and realize the risk involved in coming within the area made dangerous by it." *Holland*, 431 A.2d at 603, citing *Joslin v. Southern Pacific Co.*, 189 Cal.App.2d 382, 11 Cal.Rptr 267 (1963), and *Herrara*, 188 Cal.App.2d at 449, 10 Cal.Rptr. at 580. Because Plaintiff cannot satisfy section 339(c) of the Restatement (Second) of Torts, section 339 is not applicable to this case. Accordingly, Defendants' Motion for Summary Judgment will be granted.

## IV. Conclusion

Summary Judgment will be granted in favor of Defendants because (i) Plaintiff concedes that Defendants cannot be held liable based on the design of the handholds on the railcars; (ii) Plaintiff concedes that there is no liability on the part of Norfolk Southern Corporation as the parent company of Norfolk Southern Railway Company; and (iii) Plaintiff cannot set forth a claim of negligence under section 339 of the Restatement (Second) of Torts. Defendants' motions in limine to bar Plaintiff's expert witnesses and their testimony, although appearing to have merit, will be denied as moot.

An appropriate Order will be entered.


November 20, 2007                                Maurice B. Cohill, Jr.
Date                                             Maurice B. Cohill, Jr.,
                                                 Senior District Judge